OPINION
On April 2, 1997, a complaint was filed against appellant, Frank Birch, alleging appellant `did engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking, to wit: On April 1, 1997 Frank Birch did receive a (sic) illegal gambling bet from an undercover officer of the Alliance Police Department, in violation of O.R.C. 2915.02.' On the same day, Alliance Police Officer Gregory Burr applied for and received a warrant to search appellant's residence. On May 16, 1997, appellant filed a motion to suppress all evidence seized from appellant and his residence based upon a deficient search warrant. A hearing was held on June 25, 1997. By judgment entry filed July 22, 1997, the trial court denied said motion.
On September 5, 1997, appellant pled no contest. By judgment entry filed same date, the trial court found appellant guilty and sentenced him to thirty days in jail and imposed a $1000 fine plus court costs.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE COURT ERRED IN CONVICTING APPELLANT OF GAMBLING BASED ON HIS NO CONTEST PLEA WHEN THE COMPLAINT, BILL OF PARTICULARS, AND THE PROSECUTOR'S EXPLANATION OF CIRCUMSTANCES FAILED TO PROVIDE A BASIS FOR ALL THE ELEMENTS OF GAMBLING IN VIOLATION OF R.C. 2915. (A) (1).
II
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS CERTAIN ITEMS SEIZED FROM THE DEFENDANT'S PREMISES, AS THE PORTION OF THE SEARCH WARRANT AUTHORIZING THE SEARCH FOR THESE ITEMS WAS NOT BASED ON ANY PERSONAL KNOWLEDGE OF THE AFFIANT NOR ANY SUFFICIENTLY CORROBORATED OR RELIABLE HEARSAY.
III
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS, AS THE SEARCH WARRANT WAS OVERBROAD AND VIOLATIVE OF THE CONSTITUTIONAL REQUIREMENT OF PARTICULARITY.
 I
Appellant claims the trial court erred in finding him guilty of bookmaking based upon the facts presented by the State at his no contest plea. We disagree.
Appellant was convicted of gambling in violation of R.C.2915.02 which states in pertinent part:
(A) No person shall do any of the following:
 (1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking;
 (2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;
R.C. 2915.91(A) defines bookmaking as "the business of receiving or paying off bets." The 1974 Committee Comment to said section explains the definition of bookmaking as follows:
 The definition of "bookmaking" emphasizes its character as a business, in order to avoid penalizing those who engage in private wagering not undertaken or maintained for profit. When the loser pays off the winner of a private bet between friends, it cannot be said that the activity was carried as a business or for profit. In this latter regard, the fact that a bettor player hopes to win does not in itself constitute a profit motive in the context of this section.
R.C. 2915.01(B) defines "bet" as "the hazarding of anything of value upon the result of an event, undertaking, or contingency, but does not include a bona fide business risk." The 1974 Committee Comment at the beginning of R.C. Chapter 2915 explains the purpose for the statutes therein as follows:
 The fundamental thrust of new Chapter 2915. is to prohibit the business of gambling without forbidding gambling carried on for pleasure rather than profit.
 Under the chapter, all forms of gambling and activities in aid of it are illegal if carried on as a business, or for personal profit, or as a significant source of income or livelihood. Otherwise, no form of gambling is illegal. Gambling in public is prohibited to avoid enforcement problems, and this represents a partial exception to the general rule in the chapter.
The State presented the following facts to the trial court at the no contest plea:
 MR. ZUMBAR: Your Honor, the facts of the matter are that on April 1st, 1997, the Defendant did engage in book making, or knowingly engage in conduct that facilitates book making, specifically, on April 1st, 1997, Frank Birch, did receive an illegal gambling bet from an undercover police officer for the Alliance Police Department. This undercover gambling bet was placed by undercover Officer Gregory Burr, using the alias of Mike. When Officer Gregory Burr placed his bet, he received a receipt for the bet, it was for a baseball game and the payoff was to be delivered and picked up, if the bet was successful with Mr. Birch. His bet was placed in the City of Alliance, County of Stark, State of Ohio, actually in the bar of Kelly. This bet was audio taped with audiotape surveillance. This Mr. Birch, is the same Mr. Birch that placed that bet.
Appellant argues this recitation of the facts did not establish bookmaking because it did not support all of the essential elements of the charge. We disagree because the State essentially read the complaint which claimed an illegal bet was made, and explained the circumstances in which the bet was made. We find the complaint and the State's recitation of the facts to support the basic elements of R.C. 2915.02(A).
Assignment of Error I is denied.
 II, III
Appellant claims the trial court erred in denying his motion to suppress. Appellant attacks the sufficiency of the affidavit to support probable cause for the search warrant and the overbroad wording of the issued warrant.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v.Klein (1991), 73 Ohio App.3d 486; State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams
(1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996),116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo
on appeal."
 PROBABLE CAUSE
Appellant argues the search warrant was issued without a showing of probable cause. We disagree.
To withstand constitutional scrutiny, a search warrant may only be issued upon a showing of probable cause. The standard for determining whether probable cause to believe evidence exists in a particular location is "whether, given all the circumstances set forth in the affidavit * * * there is a fair probability that contraband or evidence will be found in a particular place."Illinois v. Gates (1983), 462 U.S. 213, 238.
Alliance Police Officer Gregory Burr, acting on a complaint of gambling activity, went to Kelly's Lounge and personally observed appellant sitting at a table by a pay telephone, answering the telephone, taking bets and placing notations on the wall. April 2, 1997 T. at 5. Officer Burr also observed appellant going to and from his residence and Kelly's Lounge. Id.
Officer Burr placed a $75 bet with appellant on a baseball game.Id. Appellant told Officer Burr he had to go home to "get the odds and the lines, the latest from Vegas." Id. at 6.
Given Officer Burr's personal observations and testimony, we find there was a fair probability that contraband or evidence would be found at appellant's residence. Upon review, we find sufficient evidence to support probable cause for the issuance of the search warrant.
 SCOPE OF THE WARRANT
The search warrant, attached to the April 9, 1997 Request For Bill of Particulars, commanded the search and seizure of contraband property to wit:
1. BETTING PARAPHERNALIA.
2. BETTING SLIPS, LEDGERS, NOTES.
3. PARLAYS, SCHEDULES, LINES, POINTSPREADS.
4. MONEY.
5. TELEVISION.
6. FAX MACHINE.
7. COPIER.
8. TELEPHONE.
 9. COMPUTER, CALCULATOR OR OTHER ELECTRONIC EQUIPMENT USED IN BETTING.
The warrant classified the above items as "evidence of the commission of a criminal offense, to wit: GAMBLING IN VIOLATION OF 2915.92."
In State v. Benner (1988), 40 Ohio St.3d 301, 307, the Supreme Court of Ohio spoke to the requirement of specificity in search warrants as follows:
 In search and seizure cases where a warrant is involved, the requisite specificity necessary therein usually varies with the nature of the items to be seized. Where, as here, the items are evidence or instrumentalities of a crime, it appears that the key inquiry is whether the warrants could reasonably have described the items more precisely than they did. See LaFave, Search and Seizure: A Treatise on the Fourth Amendment (1978) 104-105, Section 4.6 (d).
Appellant argues the listed items in the warrant sub judice
were not rationally related to any criminal activity. Appellant argues some of the listed items (money, television, fax machine) are items found in anyone's home, and "parleys" are inapplicable to the type of gambling described in the warrant.
Although we agree some of the listed items are of a generic nature, we find given the description of appellant's activity in the affidavit i.e. going to and from his residence and Kelly's Lounge, the listed items could reasonably be associated with criminal activity.
Appellant also argues the "command" section of the search warrant failed to enumerate the items to be seized. Said section states as follows:
 THEREFORE, YOU ARE HEREBY COMMANDED to search within three (3) days the premises situated at TWO STORY MULTI-UNIT ROOMING HOUSE, APARTMENT TWO DOWN, 105 NORTH MECHANIC AVENUE, ALLIANCE, OHIO, STARK COUNTY, OHIO and all persons found therein, for evidence of any of the above specified items that may be found therein and seized the same and forthwith make a return of said property so seized with this court; and in the alternative you may for safe keeping log the inventoried items in the police evidence room.
We find the referral to "any of the above specified items" to be sufficient. This reference in general terms give proper direction to the officers as to the scope of the warrant.
Assignments of Error II and III are denied.
The judgment of the Alliance Municipal Court of Stark County, Ohio is hereby affirmed.
Farmer, P.J., Gwin, J. and Wise, J. concur.