OPINION
Defendant-appellant Christopher Harrington appeals from the Judgment Entry of the Stark County Court of Common Pleas overruling his Motion to Suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE
On July 27, 1998, the Stark County Grand Jury indicted appellant on one count of possession of cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree. At his arraignment on July 31, 1998, appellant entered a plea of not guilty to the charge contained in the indictment. On September 2, 1998, appellant filed a Motion to Suppress the evidence seized from him. A supplement to such motion was filed by appellant on September 9, 1998. The following evidence was adduced at the September 9, 1998, hearing on appellant's Motion to Suppress. On June 16, 1998, at approximately 2:00 A.M., Patrolman William Morris of the Alliance Police Department was out patrolling in uniform with Patrolman Bartolet in the 200 block of Seneca Avenue. Morris testified that the "300 block of both Freedom and Seneca [is] very, very active for drug activity" and that he had both witnessed drug activity and made many arrests in that specific area before. Transcript of Proceedings at 9. Both patrolmen were "working off of some tips of drug activity" and, from their hiding place behind some shrubs approximately 40 yards away, were conducting surveillance of a suspected crack house in the 300 block of south Seneca, when they observed a vehicle approaching from the north. Transcript of Proceedings at 9 — 10. Just earlier that evening, at that location, the officers had observed two hand-to-hand exchanges between known drug users and/or dealers. After the vehicle pulled to the curb and its lights and engine were shut off, appellant exited the vehicle from the passenger side and walked one block from the 200 block of Seneca to the suspected crack house in the 300 block that the officers were observing. Two other individuals remained in the vehicle. Appellant then entered the suspected crack house and exited approximately two to three minutes later, motioning for the vehicle that had dropped him off. As the vehicle drove towards appellant, the two officers, who believed that their cover had been blown, approached appellant and the vehicle. Once the two officers identified themselves to appellant as police officers, they patted him down for safety since weapons are often associated with drug activity. Although no weapons were found on appellant's person, Patrolman Bartolet felt a bulge in appellant's pocket. When Patrolman Bartolet asked appellant what the bulge in his pocket was, appellant responded as follows: "That's a rock." Transcript of Proceedings at 18. Patrolman Bartolet then removed the rock and identified it as a suspected rock of crack cocaine. Appellant was then arrested. The rock, which weighed .10 gram, later tested positive for crack cocaine. At the conclusion of the suppression hearing, the trial court took the matter under advisement. Thereafter, pursuant to a Judgment Entry filed on September 17, 1998, the trial court overruled appellant's Motion to Suppress without setting forth its reasons for doing so. On September 21, 1998, appellant entered a plea of no contest to the crime of possession of cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree. The trial court, on October 26, 1998, sentenced appellant to three years of community control under specified terms and conditions. An entry memorializing appellant's sentence was filed on October 27, 1998. At the direction of this court upon remand, the trial court, on June 8, 1999, filed a Judgment Entry containing findings of fact and conclusions of law setting forth its reasons for denying appellant's Motion to Suppress. It is from the trial court's denial of his Motion to Suppress that appellant prosecutes his appeal, raising the following assignment of error:
THE TRIAL COURT ERRED IN FINDING THE PAT DOWN SEARCH, QUESTIONING AND SUBSEQUENT REMOVAL OF AN ITEM FROM DEFENDANT-APPELLANT'S POCKET TO BE WITHIN THE LEGITIMATE SCOPE OF A SEARCH FOR WEAPONS FOR OFFICER'S SAFETY.
 I
Appellant, in his sole assignment of error, argues that the officers' search, questioning and subsequent seizure of evidence from him violated his rights under the Fourth Amendment to the United States Constitution which prohibits unreasonable searches. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993) 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,96, State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S. Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Under Terry v. Ohio (1968),392 U.S. 1, a law enforcement officer may initiate an investigatory stop of a person when the officer has a reasonable suspicion of criminal activity. To justify such a stop, the seizing officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant the officer's suspicion of criminal activity. Terry supra, at 26. The propriety of an investigatory stop must be considered by reviewing the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. In the case sub judice, the two officers had a reasonable and articulable suspicion of criminal drug activity to support an investigative stop of appellant. Patrolman Morris testified that he and Officer Bartolet were patrolling the 300 block of Seneca, which is in an area of high drug activity, based on tips from reliable confidential informants "that there was a lot of drug transactions and activity at that location." Transcript of Proceedings at 12. Appellant was observed by the two officers walking into a suspected crack house at approximately 2:00 A.M. and exiting only two to three minutes later, which Officer Morris testified is consistent with the time it takes to engage in a drug transaction. The car that had dropped appellant off, which contained two other occupants, was parked one block down the street with its engine and lights off. Just prior to appellant's arrival, the officers had observed two hand-to-hand exchanges between known drug users and/or dealers at the suspected crack house. Clearly, the above facts, taken together with any reasonable inferences from the same, reasonably warranted the officers' suspicion of criminal drug activity. Moreover, once appellant was stopped, the two officers were justified in conducting a limited pat-down search for weapons if they had reason to believe that they were dealing with an armed and dangerous individual. Terry, supra. "The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." State v. Evans (1993), 67 Ohio St.3d 405, 413. At the suppression hearing, Officer Morris testified as follows: ". . . due to that area, the drug activities, weapons being involved very often with drugs, ah, he [appellant] was patted down." Transcript of Proceedings at 18. He further stated that appellant was patted down for "officer safety". Transcript of Proceedings at 24. Because appellant was searched to ensure that no weapons were present on his person, the search was proper under Terry, supra. Since the officer's stop and pat-down of appellant was reasonable under Terry, the next issue for determination is whether, as appellant contends, Patrolman Bartolet's questioning of appellant as to the identity of the bulge in appellant's pocket constituted a custodial interrogation, necessitating a Miranda warning. Pursuant to Miranda v. Arizona (1966), 384 U.S. 436, the officers would have been required to read appellant his rights prior to questioning him if he was in custody. "The determination of whether one is in custody focuses on how a reasonable person in the detainee's position would have felt in the same situation." State v. Gatson (1996),110 Ohio App.3d 835, 842, citing Berkemer v. McCarty (1984)468 U.S. 420, 434. Only when a person is actually deprived of his freedom in some significant way are Miranda warnings required. State v. Maurer (1984) 15 Ohio St.3d 239. Patrolman Morris, when asked if appellant was free to leave at the time Patrolman Bartolet was patting him down, testified that appellant would have been free to leave once he provided identification. Appellant, therefore, was not in custody when he was being questioned since he was not deprived of his freedom in some significant way. Nor would a reasonable person in appellant's position have concluded from the pat-down that he was under arrest. Moreover, any questioning of appellant regarding drug possession "was simply on-scene investigative questioning, which in no way triggered the requirement of Miranda warnings." Gaston, supra. at 843. See also Berkemer, supra. at 434 and State v. Van Fossen (1984), 19 Ohio App.3d 281, 284. Appellant was not required to answer Patrolman Bartolet's questions concerning the contents of his pocket nor was he under arrest until after he volunteered the information concerning the same. Since appellant was "simply asked routine questions in a brief investigatory stop that did not rise to the crest of a custodial interrogation," appellant was not in custody and was not entitled to a recitation of his Miranda rights. See Gatson, supra. However, as the trial court stated in its June 28, 1999, Judgment Entry, "[o]nce the [appellant] informed the police officer that there was contraband in his pocket, . . . then the police officer was well within his authority to further investigate and to seize the contraband." Since the trial court did not err in overruling appellant's Motion to Suppress, appellant's sole assignment of error is denied.
The judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J. Wise, P.J. and Farmer, J. concur