OPINION
Defendant-appellant, James J. Pingor, appeals from his February 16, 2001 conviction for operating a motor vehicle while under the influence of alcohol. For the reasons that follow, we reverse.
On August 13, 2000, at approximately 9:09 p.m., Sgt. Mark E. Anderson of the village of New Albany Police Department, pulled appellant over on suspicion of driving under the influence of alcohol. Sgt. Anderson was accompanied in his cruiser by Carl E. McNeal, Jr., a reserve officer with the New Albany Police Department. Sgt. Anderson first noticed appellant because he was driving approximately fifty m.p.h. in a sixty-five m.p.h. zone on State Route 161. Before stopping appellant, Sgt. Anderson followed appellant for several miles and observed numerous traffic violations, including crossing over the dotted center line of the road, making a left turn from the right hand lane, and making an abrupt stop fifteen feet past the stop bar at the intersection of Central College and New Albany Road.
Reserve Officer McNeal made the initial approach to appellant's Jeep, and Sgt. Anderson assumed a back-up position five feet from the other officer. As Reserve Officer McNeal approached, appellant already had unzipped his window slightly and had his license and insurance card hanging out. Reserve Officer McNeal asked appellant to unzip the window all the way down, and appellant asked "[w]hy" and if he were under arrest. Eventually, appellant zipped his window halfway down, and Reserve Officer McNeal smelled the odor of an alcoholic beverage. Sgt. Anderson asked appellant three or four times to step out of the vehicle. When appellant finally opened the door, the odor of an alcoholic beverage became more pronounced. Sgt. Anderson testified that appellant's speech was slurred, and he occasionally mumbled some words. Appellant presented a neat appearance, but he staggered as he walked to the rear of the Jeep.
Appellant asked Sgt. Anderson to "give him a break," as he lived just down the road. Appellant asked questions for several minutes, but eventually agreed to perform a series of field sobriety tests. Sgt. Anderson administered a number of tests, including the horizontal gaze nystagmus ("HGN"), the walk and turn, and the one-legged stand. Appellant swayed during the tests, and Sgt. Anderson could smell the odor of an alcoholic beverage on appellant's breath. According to Sgt. Anderson, appellant dropped his foot down three times during the one-legged stand to keep his balance. He stepped off the line three times during the walk and turn, missed touching heel to toe, and did not turn correctly. A third officer, Officer Rudolph, who appeared at the scene for backup, observed a portion of the walk and turn test and did not see appellant walk off the line as Sgt. Anderson testified. At the conclusion of the three standard tests, Sgt. Anderson informed appellant that he had failed the tests. Appellant asked if there were something more he could do. Although he had already made the determination that appellant was impaired, Sgt. Anderson then had appellant perform the finger-to-nose test, recite the alphabet, and balance with his head tilted back. Appellant recited the alphabet correctly, missed touching the tip of his nose with his finger, and swayed side to side and back and forth during the balance test.
After completion of the field sobriety tests, Sgt. Anderson placed appellant under arrest and transported him to police headquarters where appellant consulted with an attorney and refused a breath test. Appellant was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), driving left of center and right of roadway in violation of R.C. 4511.25, and failure to stop at a stop sign in violation of R.C. 4511.12. Appellant waived his right to a jury trial and consented to a bench trial.
Appellant filed a motion to suppress and a motion in limine to exclude all evidence of the field sobriety tests. In the interest of judicial economy, the motions were combined and heard in the course of the trial to the bench. The trial court suppressed the results of the HGN tests conducted by Sgt. Anderson and Officer Rudolph, but admitted the walk and turn test and the one-legged stand test for purposes of probable cause and on the ultimate question of guilt beyond a reasonable doubt. The court made no indication that it considered the finger-to-nose test, recitation of the alphabet, or the balancing test in making its determination.
At the close of the state's case, appellant moved for acquittal on the basis that the state had failed to elicit any opinion evidence that appellant was operating his vehicle while under the influence of alcohol. The trial court overruled appellant's motion on the basis that the prosecution had elicited an opinion from Officer Rudolph that appellant was under the influence of alcohol at the time of operation.
Appellant then called a number of witnesses on his behalf. Appellant's theory of the case was that his slow and erratic driving was not because he was under the influence of alcohol, but, rather, because he was talking on his cell phone while driving.
Danielle Sparks, an attorney and colleague, testified that she met appellant at the police station and advised him to refuse the breath test. She noticed a slight odor of alcohol, but in her opinion at 10:25 p.m., appellant was not under the influence.
Patrick Ash, a legal assistant for Owens Corning, testified that he met appellant after work around 6:15-6:30 p.m. Ash stated that he and appellant consumed three pints of draft beer apiece and a large plate of nachos over the course of two and one-half hours. According to Ash, when appellant left the establishment he had no overt physical indications that he was under the influence and, in fact, it was as if he had nothing at all to drink.
Lynn Young was supposed to meet appellant at 9:00 p.m. and talked to appellant while he was driving. Young said appellant was not confused, was not mumbling, and his conversation was normal.
Kristine Griggs, who described herself as appellant's best friend, also talked to appellant by phone while he was driving. She stated that he was not slurring his words and not mumbling, but he was talking loudly and was excited about a new job opportunity.
The trial court found the case to be "a close call," but found appellant guilty of all charges. (Tr. 306-307.) Appellant has appealed his conviction for OMVI, assigning as error the following:
ASSIGNMENT OF ERROR NO. I
 THE TRIAL COURT ERRED IN ADMITTING THE FIELD SOBRIETY TESTS INTO EVIDENCE WHEN THE OFFICER FAILED TO ADMINISTER THE TESTS IN STRICT COMPLIANCE WITH N.H.T.S.A. STANDARDS.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED IN CONSIDERING EVIDENCE OF THREE (3) NON-STANDARDIZED SOBRIETY TESTS WHEN THE OFFICER HIMSELF INDICATED HE PUT "NO WEIGHT" ON THE APPELLANT'S PERFORMANCE OF THOSE TEST[S].
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT ERRED IN FAILING TO GRANT THE APPELLANT'S OHIO CRIMINAL RULE 29 MOTION FOR ACQUITTAL AT THE CLOSE OF THE PROSECUTOR'S CASE.
 ASSIGNMENT OF ERROR NO. IV THE TRIAL COURT'S JUDGMENT FINDING THE APPELLANT GUILTY OF DRIVING UNDER THE INFLUENCE OF ALCOHOL WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant's first assignment of error addresses the issue of whether the field sobriety tests were conducted in strict compliance with National Highway Traffic Safety Administration ("NHTSA") regulations. Appellant contends that the trial court erred in admitting into evidence the walk and turn test and the one-legged stand test as the tests were not administered in strict compliance as required by State v. Homan (2000), 89 Ohio St.3d 421, and, therefore, should have been excluded. Without that evidence, appellant asserts there was insufficient evidence with which to convict him of operating a motor vehicle under while under the influence of alcohol.
 There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; and State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37 . Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger, supra.
The Ohio Supreme Court has held that "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Homan, at paragraph one of the syllabus. "When field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable." Id. at 424. The logical extension of that holding is that field sobriety test results are admissible at trial as evidence of guilt only if the administering officer strictly complied with the standardized testing procedures. Id. at 429 (Rocco, J., concurring).
In Homan, the walk and turn test was suppressed because the trooper deviated from established police procedure in two ways. First, he conducted the test between his patrol car and the suspect's car. Second, he did not instruct the suspect on how to perform the test while she stood on the testing line with her right foot placed in front of her left. In addition, the walk and turn test was conducted on a gravel-covered, uneven road surface when a flat surface is required to perform the test. Id. at 422.
While these deviations may seem minor and hypertechnical, the Ohio Supreme Court has made clear that strict compliance, not substantial compliance, is the standard for admissibility of field sobriety tests. Quoting from the NHTSA manual, the Supreme Court noted "if any one of the standardized field sobriety test elements is changed, the validity is compromised." Homan, at 425. The Ohio Supreme Court went on to state "it is well established that in field sobriety testing even minor deviations from the standardized procedures can severely bias the results." Id. at 426.
In addition, the burden was on the prosecution to establish that the field sobriety tests were conducted properly. The state bears the burden of proof, including the burden of going forward with evidence, upon a proper motion to suppress by defendant. City of Xenia v. Wallace (1988),37 Ohio St.3d 216, paragraph two of the syllabus; State v. Nickelson (July 20, 2001), Huron App. No. H-00-036, unreported; and State v. Barrett (Feb. 26, 2001), Licking App. No. 00CA-47, unreported.
In Nickelson, the Huron County Court of Appeals held that results of field sobriety tests should have been suppressed because the state failed to introduce any evidence to prove that the tests were conducted in a standardized manner as provided by the NHTSA. Although officers testified as to which tests were conducted and how they were conducted, no witness testified as to the guidelines, and the manual itself was not admitted.
In this case, the trial court determined that the HGN field sobriety test was not performed in strict compliance with standardized testing procedures. Therefore, the results of that test were excluded from consideration, as it was clear that Sgt. Anderson deviated from the procedures outlined in the NHTSA manual. However, the trial court overruled the remaining portion of appellant's motion stating "the walk 
turn as well as one leg stand test are not suppressed and found to be in compliance." (Entry of Feb. 21, 2001.)
In this case, Sgt. Anderson testified as to how the field tests were conducted, and defense counsel cross-examined Sgt. Anderson by reading excerpts from the NHTSA manual, but the manual itself was never admitted into evidence.[1] Appellant argues that there are several places in the record that indicate Sgt. Anderson deviated from the procedures set forth in the NHTSA manual.
First appellant contends that, with respect to the walk and turn test, Sgt. Anderson failed to tell appellant to place his right foot in front of the left foot with the heel of the right foot touching the front of the left foot before beginning the test. We disagree. A check of the transcript reveals that in fact Sgt. Anderson testified that "I always tell everyone I have perform this test to put their left foot on the line and to put their arms down to their side and just stand there, again, with their heels and toes touching for a brief moment." (Tr. 62.) Second, appellant argues that Sgt. Anderson failed to inform appellant to keep his arms at his sides watching his feet at all times during the performance of the test. We have reviewed the transcript and are unable to find any portion of the transcript in which Sgt. Anderson specifically stated that he gave this instruction, probably because nowhere in the transcript was Sgt. Anderson specifically asked if he gave that particular instruction. On cross-examination, Sgt. Anderson was asked, "During your direct examination, have you, to the best of your ability, described all the instructions and procedures that you used in giving him the field test?" To which Sgt. Anderson replied, "Yes." (Tr. 88.) One may infer from these questions and responses that Sgt. Anderson failed to instruct appellant to keep his arms at his sides at all times while walking. However, it may also be inferred that Sgt. Anderson did give this instruction because in describing how appellant performed on the test, Sgt. Anderson indicated that appellant attempted to keep his arms at his sides.
 He — Again he stepped off the line. I believe it was two more times he had stepped off the line. He — he didn't bring his arms really up above six inches, but he — as he would walk, he would kind of sway as he would try to gain his balance by balancing on one leg as he would stand without actually raising his arms up above six inches. So I didn't indicate on the report that he raised his arms up, but he did everything but raise his arms up to maintain his balance as he would walk back those nine steps. [Tr. 68-69.]
Third, appellant argues that Sgt. Anderson failed to tell appellant to keep his initial position until he was told to begin the test. Again, we disagree with this contention as the transcript indicates that appellant was given this instruction. Sgt. Anderson testified that he "always tell everyone * * * to put their arms down to their side and just stand there." (Tr. 62.) Sgt. Anderson also testified that:
 Again, he stood with his right foot in front of his left foot. I said, "Do you understand the instructions?" He said, "Yes." I said, "Do you understand you need to walk nine steps, pivot on your lead foot, and then come back walking nine steps the opposite direction?" "Yes, I understand." I said, "Go ahead and start whenever you're ready." * * * [Tr. 66.]
Finally, appellant argues the walk and turn test was administered in a very dark rural area in between the patrol cars. The transcript indicates the test actually was administered between the patrol car and appellant's vehicle. Although the Homan case indicates such a location was a violation of standardized procedure, there was no testimony before the trial court that administering the test in that location violated standardized testing procedure. Based on all the foregoing, the trial court did not err when it found compliance and admitted the walk and turn test.
With respect to the one-legged stand, appellant argues that Sgt. Anderson deviated from standard procedure in the following ways: (1) he failed to take field notes at the time of the administration of the tests; (2) he testified that appellant put his foot down three times during the one-legged stand, but did not check the box on the alcohol influence report form indicating appellant put his foot down three or more times; (3) he incorrectly told appellant to look at the Sgt.'s toe instead of appellant's own foot when he performed the test; (4) he failed to tell appellant not to start the test until I tell you; (5) he failed to tell appellant to keep both legs straight, arms at your side, as required by the manual; and (6) he failed to tell appellant to keep his arms at his sides at all times while performing the test.
We shall address each of these concerns in turn. First, there was no evidence before the trial court that field notes were a mandatory part of the one-legged stand test. Second, Sgt. Anderson's testimony being at variance with the alcohol influence report goes to weight, not admissibility, of the evidence. Third, on the same page of the transcript where Sgt. Anderson says, "I want you to look at my toe," he also explained that he told appellant, "I explained to him I wanted him to look at his toe and count to 30 by thousands, and I gave him an example." (Tr. 57; emphasis added.) It was the responsibility of the trier of fact to assess the Sgt.'s credibility and determine which statement was an accurate representation of the truth. Fourth, Sgt. Anderson did tell appellant not to start the test until I tell you to do so. At page fifty-seven of the transcript, he stated, "And as I explained to him, I said, `What I would like for you to do when I tell you to start is to raise whichever foot you choose.'" (Emphasis added.) Fifth, Sgt. Anderson did instruct appellant to keep his leg straight when he raised it off the ground. (Tr. 57.) And sixth, he did instruct appellant to put his arms down to his sides. (Tr. 57.) The record does not, however, reflect that Sgt. Anderson told appellant to keep both legs straight or to keep his arms at his sides at all times while performing the test.
Based on our review of the record, we conclude that the prosecution failed to establish strict compliance with the one-legged stand and, accordingly, the first assignment of error is sustained in part and overruled in part. The case must be remanded for the trial court to determine whether enough evidence exists absent the one-legged stand to find appellant guilty of operation of a motor vehicle while under the influence of alcohol.
In his second assignment of error, appellant argues the trial court erred in considering evidence of three nonstandardized field sobriety tests. Since the matter must be remanded for further proceedings, this assignment of error is moot. In the interest of justice, we note, however, that this case was tried before the bench. In a bench trial, trial judges are presumed to rely only upon relevant, material, and competent evidence in arriving at their judgments. State v. Richey (1992), 64 Ohio St.3d 353, 362; and State v. Post (1987),32 Ohio St.3d 380, 384. In order to defeat this presumption, it must affirmatively appear on the record that the trial court did rely on irrelevant evidence. State v. White (1968), 15 Ohio St.2d 146, 151. Here, there is no indication in the record that the trial court considered the nonstandard field sobriety tests in reaching its verdict. The second assignment of error is, therefore, not well-taken and overruled as moot.
In his third assignment of error, appellant contends the trial court erred in failing to grant appellant's motion for acquittal as there was no opinion evidence from any police officer that appellant was under the influence of alcohol at the time of the alleged violation. Thus, appellant contends the evidence was insufficient to sustain a verdict of guilty on the OMVI charge.
While it is true that, after excluding the HGN test, Officer Rudolph could not offer an opinion as to whether or not appellant was under the influence of alcohol, Sgt. Anderson did offer such testimony. Sgt. Anderson opined that appellant's erratic driving, his uncooperative attitude, the strong odor of alcohol, slurred speech, mumbled words, his performance on the field sobriety tests, bloodshot eyes, and flushed face, were all signs that appellant was impaired and under the influence. (Tr. 82-83, 174.) Therefore, the third assignment of error is not well-taken and is overruled.
In his fourth assignment of error, appellant contends his conviction was against the manifest weight of the evidence. Because we must remand this matter to the trial court for further proceedings, this assignment of error is overruled as moot.
Based on the foregoing, appellant's first assignment of error is sustained in part and overruled in part. The second and fourth assignments of error are overruled as moot, and the third assignment of error is overruled. The judgment of the trial court is reversed and remanded for further proceedings in accordance with this opinion.
TYACK and KENNEDY, JJ., concur.
[1] Appellant has attached portions of the manual to his brief, but we are unable to consider them, as they are not part of the record on appeal. This court cannot consider exhibits, affidavits, or "other matters attached for the first time to an appellate brief which were not properly certified as part of the trial court's original record and submitted to the court of appeals." App.R. 9(A); Isbell v. Kaiser Found. Health Plan (1993), 85 Ohio App.3d 313, 318.