OPINION
{¶ 1} Defendant-appellant Gregory Speakman appeals his conviction and sentence from the Fairfield Municipal Court on one count of resisting arrest. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 26, 2004, an affidavit was filed charging appellant with resisting arrest in violation of R.C. 2921.33(A), a misdemeanor of the second degree. At his arraignment on July 27, 2004, appellant entered a plea of not guilty to the charge.
 {¶ 3} Thereafter, on September 10, 2004, appellant filed a Motion to Suppress, arguing that there was "no lawful reason to initially seize and detain appellant." A hearing on appellant's motion was held on October 12, 2004. The following evidence was adduced at the hearing.
 {¶ 4} On July 25, 2004, Deputy Greg Stats of the Fairfield County Sheriff's Office was traveling eastbound on U.S. Route 22 in uniform in a marked cruiser at 55 miles per hour when he observed a vehicle sitting in a driveway in Fairfield County. The vehicle, which was approximately fifty (50) feet back from the roadway, had its headlights on. When the deputy looked over towards the vehicle, he observed two people in the vehicle, which had Hocking County plates.
 {¶ 5} Deputy Stats then turned his cruiser around, pulled in front of the vehicle and stopped his cruiser. When asked why he pulled in near the vehicle, the deputy testified that "I thought it was kind of suspicious that a car was sitting there, you know, it was late at night, after 12:00." Transcript of October 12, 2004, hearing at 9. As the deputy pulled up, but before he had any contact with the vehicle's occupants, the occupants got out of the vehicle and switched seats so that appellant was in the passenger seat. The following testimony was adduced when the deputy was asked what happened next:
 {¶ 6} "A. Um, I'm in the cruiser (inaudible) Speakman (inaudible) was trying to get in the passenger door and he's telling me, "Everything's okay. Everything's okay. We don't need you here." So I'm, it arouses my suspicion that he don't need me.
 {¶ 7} "Q. Um, hum.
 {¶ 8} "A. (Inaudible) Hocking County plates and all that and I asked him to come over and step in front of my cruiser while I talk to the female to make sure everything's okay with her.
 {¶ 9} "Q. Okay.
 {¶ 10} "A. I'm thinking a domestic situation in my mind.
 {¶ 11} "Q. Okay.
 {¶ 12} "A. Um, as I pass Mr. Speakman and tell him to step in front of the cruiser, I smell that he's been drinking. . . .
 {¶ 13} "Q. Okay.
 {¶ 14} "A. Alcohol.
 {¶ 15} "Q. Did you make any other observation about, uh, whether or not he's impaired?
 {¶ 16} "A. (Inaudible) at that time, no.
 {¶ 17} "Q. Okay. But you smelled an odor of alcohol on Mr. Speakman?
 {¶ 18} "A. Correct." Transcript of October 12, 2004, hearing at 9-10.
 {¶ 19} As Deputy Stats leaned in the vehicle's window to ask the female passenger if everything was okay, he observed an open twelve pack or case of beer on the passenger side floorboard. Deputy Stats then asked for identification from appellant, but was just given appellant's social security number. Appellant was unable to produce a driver's license. After the information was run through the LEADS computer, the deputy was advised that appellant had an active warrant for his arrest. According to Detective Stats, appellant, when advised that he needed to put his hands on the hood of the car, took off running.
 {¶ 20} The deputy was finally able to force appellant to the ground. Deputy Stats testified that as the two were on the ground, "I keep telling him to quit resisting . . . I also felt him start reaching for my right side, grabbing a hold of my weapon." Transcript of October 12, 2004, hearing at 15. The deputy then sprayed appellant with pepper spray.
 {¶ 21} On cross-examination, Deputy Stats testified that, as he drove by the vehicle, he did not observe anything that caused him any concern, such as rapid or furtive movements. He further testified that he did not observe anything illegal or unlawful either when driving by or after stopping. The deputy further testified that both occupants in the vehicle verbally indicated to him that they were okay. The following is an excerpt from Deputy Stats' testimony on cross-examination:
 {¶ 22} "Q. Anything about your observations of Gregory Speakman or Susan Kornmiller as they exited the vehicle that caused you to believe that there was any concern there?
 {¶ 23} "A. Yes.
 {¶ 24} "Q. And what was that?
 {¶ 25} "A. The way they said that it was okay, the immediate exiting of the vehicle as soon as I stopped the cruiser. I mean, I'm not there in any, in any lawful manner, you know, to do that. I'm there for welfare or to see if everything's okay and then once they immediately exit the vehicle and switch and they're, you know, erratically telling me everything's okay, everything's okay., you know, its. . . .
 {¶ 26} "Q. Well, by your report. . . .
 {¶ 27} "A. Then it arouses my suspicion that something is not okay." Transcript of October 12, 2004, hearing at 24.
 {¶ 28} On cross-examination, the deputy further testified that it was "suspicious" that a vehicle with Hocking County plates containing two occupants was sitting "in a driveway that they don't belong in that I'm aware of." Transcript of October 12, 2004, hearing at 25. Both appellant and his passenger told the deputy that they lived at that address.
 {¶ 29} When questioned by the trial court, Deputy Stats testified that he turned around while driving down State Route 22 after observing the vehicle in the driveway since the vehicle did not pull out of the driveway to turn left or right. The deputy indicated that, for such reason, he thought that the vehicle's behavior was suspicious.
 {¶ 30} Susan Kornmiller also testified at the suppression hearing. Kornmiller testified that she lived at the address on Route 22 with appellant and that the two had been residing there since February of 2004. According to Kornmiller, on July 25, 2004, she and appellant were sitting in the driveway eating fast food and talking while the car was facing the highway. When asked, Kornmiller was unsure if the vehicle's headlights were on.
 {¶ 31} Kornmiller testified that she observed the cruiser drive by and then, two minutes later, come back again and pull in front of her vehicle. At the time, Kornmiller was in the passenger seat. Both appellant and Kornmiller then exited the vehicle and told the officer, when asked what was going on, that they were fine and that they lived at the location. According to Kornmiller, Deputy Stats then called the owner of the property who confirmed that appellant and Kornmiller lived there.
 {¶ 32} At the conclusion of the evidence, the trial court overruled appellant's Motion to Suppress stating, in relevant part, as follows:
 {¶ 33} "It, it really, in the Court's view, doesn't make too much difference how he came in contact with him, uh, because there was a valid warrant for his arrest. When he's verified that, he gets the name of the defendant, he gets his social security number, he calls it in and they tell him there's an active warrant for nonsupport, he has the right to arrest him. Uh, and whether or not he resisted and so forth, I'm not here to decide that, but that's the only, uh, constitutional issue. If there's an active warrant, an officer can arrest a person any place if he finds out there's a warrant for their arrest. And I don't think that, uh, unfortunately from the defendant's point of view, it makes much difference what the circumstances is that he comes in contact with him, as long as the warrant was valid at the time, and he verified that, to arrest him.
 {¶ 34} "Uh, so he's not a question here if he was doing anything wrong. I mean, obviously, the officer felt that there was some suspicious activity and, uh, the Court doesn't find that under the circumstances that any rights were violated by simply asking them to show their identification, that they, that they weren't uh, that they had a right to be there. But, the charge here is resisting arrest and that is based upon the fact that he had a lawful reason to arrest him and that was based upon, not anything that they did at the scene, but the fact that there was an active warrant out for his arrest. So, that's the key thing from the Court's point of view that there's an active warrant. He's verified this is the person that the warrant's for; he got a right to arrest him. And I don't think that how, how he came into that contact really has much significance on that charge of resisting arrest." Transcript of October 12, 2004, hearing at 65-66.
 {¶ 35} Thereafter, on January 27, 2005, appellant pled no contest to the charge of resisting arrest. As memorialized in a Journal Entry filed on the same date, appellant was sentenced to ninety (90) days in jail, with all ninety (90) days suspended, was fined $100.00, and was placed on non-reporting probation for a term of two years.
 {¶ 36} Appellant now raises the following assignment of error on appeal:
 {¶ 37} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS."
 I {¶ 38} Appellant, in his sole assignment of error, argues that the trial court erred in overruling his Motion to Suppress. Appellant specifically contends that Deputy Stats did not have reasonable and articulable suspicion of unlawful activity to initially detain and seize appellant. We disagree.
 {¶ 39} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726.
 {¶ 40} Secondly, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds.
 {¶ 41} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172;State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906; and Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657,134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal.
 {¶ 42} Appellant, in the case sub judice, argues that the trial court failed to apply the appropriate test and correct law to the facts. Appellant notes that the trial court held that, because there was an outstanding warrant for appellant's arrest, it was immaterial whether Deputy Stats had a reasonable, articulable suspicion to stop and detain appellant. Appellant contends that the appropriate test is whether Deputy Stats had a reasonable, articulable reason to stop and detain appellant and that, once such test is applied, reversal is required.
 {¶ 43} We, however, disagree since we find that there was reasonable, articulable suspicion to support Deputy Stats' approach of appellant's vehicle. An investigatory stop is permissible if a law enforcement officer has a reasonable suspicion, based on specific and articulable facts, that the individual to be stopped may be involved in criminal activity.Terry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, cert. denied (1988), 488 U.S. 910, 109 S.Ct. 264.
 {¶ 44} In the case sub judice, Deputy Stats, when he drove by the subject property at approximately 12:00 a.m., observed a vehicle with its headlights on sitting in a driveway approximately fifty feet back from the road. The vehicle was facing the highway and contained two people. When he drove by again approximately two minutes later, the vehicle was still in the driveway. Testimony was adduced that there was a stop sign in front of the driveway that gave the impression that the private driveway was a public road. While the driveway was located in Fairfield County, the vehicle had Hocking County plates. When the deputy approached the car, the two passengers got out and switched seats.[1]
 {¶ 45} Based on the foregoing, we find that Deputy Stats had a reasonable articulable suspicion of unlawful activity to justify his approach of appellant in the private driveway. We find, therefore, that the trial court did not err in overruling appellant's Motion to Suppress.
 {¶ 46} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 47} Accordingly, the judgment of the Fairfield Municipal Court is affirmed.
Edwards, J., Farmer, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The trial court, at the conclusion of the suppression hearing, found the facts to be as follows: "Uh, it's 2:00 in the morning; he sees a vehicle there, uh, coming out. It looks like it's coming out. When it doesn't come out then he wonders what's going on. He comes back and he sees these two people in the car and they both get out, which everyone's testimony is about the same. The officer says they switched positions in the car, at least the defendant's witness says they, they didn't. But anyway, the gist of it was, I think that, uh, he notices the car has a Hocking County plate on it, that it's 2:00 in the morning, the vehicle's parked back off 50 feet from the road and in addition, it came out that there is a stop sign, which perhaps it shouldn't be there because it's a private drive. I don't know, but anyway, the officer indicated that he thought it was a road and he wanted to know what was going on, why they're parked, at least maybe he assumed at that time they're parked in the roadway." Transcript of October 12, 2004 hearing at 63-64.