OPINION
Appellant Steven Adams appeals the decision of the Licking County Court of Common Pleas that denied his motion to suppress. The following facts give rise to this appeal.
On February 1, 2001, Deputy Jeremy Anker, a deputy sheriff assigned to Watkins Memorial High School as a security officer, received information, from a teacher at the high school, that certain drugs were being brought into the school by a student. The teacher had overheard other students talking about the drugs being brought to the school for sale. Deputy Anker informed the assistant principal, Terri Kubbs, of the information he received from the teacher.
On this same day, Assistant Principal Kubbs also received information, from a student, that another student by the name of "Steve" would be bringing speed to school to sell. The student providing the information did not know Steve's last name, so Assistant Principal Kubbs pulled the class roster and determined that "Steve" was the appellant, Steve Adams. Assistant Principal Kubbs informed the principal, Sam Cook, about the information she received from the student. A decision was made to further investigate the matter the following day.
On February 2, 2001, Principal Cook had appellant report to his office. Principal Cook asked appellant if he had anything in his possession that he should not have. Principal Cook advised appellant to empty his pockets. In his pants pockets, appellant had money, a lighter and a pager. Possession of a pager is in violation of school rules. Principal Cook next asked appellant to remove the jacket he was wearing and Principal Cook searched it. In the jacket, Principal Cook discovered a Crown Royal bag containing acid tablets. After discovering the drugs, Principal Cook discussed suspension procedures with appellant and telephoned his mother.
The Licking County Grand Jury indicted appellant, on February 8, 2001, for one count of possession of drugs and one count of preparation of drugs for sale. Appellant entered pleas of not guilty to both counts. Thereafter, appellant filed a motion to suppress. The trial court conducted a hearing on appellant's motion on April 27, 2001. On May 8, 2001, the trial court denied the motion to suppress as it pertained to the suppression of certain evidence found in appellant's possession.
On May 17, 2001, appellant appeared before the trial court, withdrew his previously entered not guilty pleas, and entered pleas of no contest to the charges contained in the indictment. The trial court accepted appellant's pleas and found him guilty of the charges. On June 27, 2001, the trial court sentenced appellant to a term of community control sanctions for five years. Appellant timely filed a notice of appeal and sets forth the following assignment of error for our consideration:
 I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
 I
In his sole assignment of error, appellant contends the trial court erred when it denied his motion to suppress because the search was not reasonable given the information held by the school officials at the time of the search. We disagree.
On appeal, appellant challenges the trial court's ruling on his motion to suppress on the basis that the trial court incorrectly decided the final issue raised in the motion. When reviewing this type of a claim, we must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v.Claytor (1993), 85 Ohio App.3d 623, 627, and State v. Guysinger (1993),86 Ohio App.3d 592, 594. It is based upon this standard that we review appellant's sole assignment of error.
In New Jersey v. T.L.O. (1985), 469 U.S. 325, the United States Supreme Court held that the Fourth Amendment's prohibition on unreasonable searches and seizures applies to searches conducted by public school officials. Id. at 333. Thus, "[i]n carrying out searches and other disciplinary functions pursuant to * * * [school disciplinary] policies, school officials act as representatives of the State, not merely as surrogates for the parents, and they cannot claim the parents' immunity from the strictures of the Fourth Amendment." Id. at 336-337. The Court further concluded that the warrant requirement is unsuited to the school environment because it would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools. Id. at 340. Thus, "* * * school officials need not obtain a warrant before searching a student who is under their authority." Id.
"Ordinarily, a search, * * * must be based upon `probable cause' to believe that a violation of the law has occurred." [Citations omitted.]Id. However, a "* * * school setting requires some modification of the level of suspicion of illicit activity needed to justify a search." Id. The Court stated that in a number of cases it has recognized "* * * the legality of searches and seizures based on suspicions that, although `reasonable,' do not rise to the level of probable cause." [Citations omitted.] Id. at 341. Thus, "[w]here a careful balancing of governmental and private interest suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause, we have not hesitated to adopt such a standard." Id.
The Court concluded that in a school setting, the legality of a student search depends on the "reasonableness," under all the circumstances, of the search, not on probable cause. Id. Determining reasonableness involves a two-part analysis. First, "* * * one must consider `whether the . . . action was justified at its inception,' * * *; second, one must determine whether the search as actually conducted `was reasonably related in scope to the circumstances which justified the interference in the first place,' * * *."
"* * * [A] search of a student by a teacher * * * will be `justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." Id. at 341-342. "Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 342.
We now turn to the facts of this case and apply the two-part analysis set forth above.
 A. Justification of Search
Appellant challenges the justification of the search on the basis that Principal Cook's search was not reasonable because of the information he possessed at the time of the search. Specifically, appellant argues that Principal Cook conducted the search based solely upon one tip that was not determined to be reliable or worthy of belief prior to conducting the search. Appellant further argues that the information provided by the tipster falls short of what constitutes a reasonable, articulable suspicion and therefore, cannot justify the search.
Appellant incorrectly relies upon the "reasonable, articulable suspicion" standard set forth in Terry v. Ohio (1968), 392 U.S. 1, for pat-down searches. This is not the standard to be applied to searches conducted by public school officials. Instead, searches conducted by public school officials only need be "reasonable" and do not have to rise to the level of probable cause. T.L.O. at 341.
Appellant also argues the tip upon which Principal Cook relied upon to conduct the search of appellant was not proven to be reliable. Appellant cites the following two cases in support of this argument: Florida v.J.L. (2000), 529 U.S. 266 and State v. Kincaid (Feb. 21, 2001), Licking App. No. 00CA0073, unreported. Both cases address tips provided to law enforcement and conclude that tipster reliability is required before conducting a Terry pat-down search. Tipster reliability "* * * requires that the tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." J.L. at 266.
Although appellant challenges the reliability of the tip, there is nothing in the record to indicate the tip was unreliable. In fact, Assistant Principal Kubbs testified that she had no reason to believe that the student would be lying about the information she provided. Tr. Suppression Hrng. at 25. In addition to the tip, Assistant Principal Kubbs also had information, from Deputy Anker, that a teacher had overheard other students talking about drugs being brought to the school for sale. Id. at 43. Clearly, the information provided by the tipster, to Assistant Principal Kubbs, corroborated what a teacher overheard and reported to Deputy Anker.
We would also note that the cases cited by appellant concern information provided to law enforcement about criminal activity. However, we do not believe school officials should be held to the same level of scrutiny as police officers because school officials may conduct searches as a result of a violation of school rules in addition to a violation of the criminal law. T.L.O. at 340. Thus, the Supreme Court concluded that a search is justified at its inception "* * * when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." Id. at 342. Finally, the cases cited by appellant deal with reliability of a tip as it pertains to Terry pat-down searches and thus, involve a different type of search than the one performed in the case sub judice.
We find the search conducted by Principal Cook was justified because he had reasonable grounds to believe that the search of appellant would result in evidence that appellant was violating school rules and the law. Specifically, the information provided by the tipster identified a student and also identified the illegal activity involved. Accordingly, Principal Cook had reasonable suspicion that appellant had drugs on his person and the search was justified.
 B. Scope of Search
The second element that must be considered in determining the reasonableness of a search by a school official is whether "* * * the search as actually conducted `was reasonably related in scope to the circumstances which justified the interference in the first place * * *'."T.L.O. at 341. This requires that the "* * * measures adopted * * * [be] reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 342.
Our review of the record indicates the search performed by Principal Cook was reasonably related to the objectives of the search and the search was not excessively intrusive. Principal Cox first asked appellant to empty his pants pockets. Tr. Suppression Hrng. at 8. Principal Cook then asked appellant to hand him his jacket and he searched it, discovering the Crown Royal bag containing the drugs. Id. The scope of the search by Principal Cook was not so broad as to make it unreasonable. It was limited to discovering drugs on his person.
Accordingly, we conclude the trial court did not err when it denied appellant's motion to suppress. The search conducted by Principal Cook met the "reasonableness" standard.Appellant's sole assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
Hon. Sheila G. Farmer, P. J. Hon. John W. Wise, J. Hon. John F. Boggins, J. concur.