OPINION
{¶ 1} Defendant-appellant Rachael Cook appeals her conviction and sentence from the Canton Municipal Court on one count of operating a motor vehicle with a prohibited alcohol concentration. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 7, 2006, appellant was arrested and charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, operating a motor vehicle with a prohibited alcohol concentration in violation of R.C. 4511.19(A)(1)(d), a misdemeanor of the first degree, failure to display license plates in violation of R.C. 4503.21, a minor misdemeanor, driving left of center in violation of R.C. 4511.25, a minor misdemeanor, and failing to wear a seat belt in violation of R.C.4513.263, also a minor misdemeanor.
 {¶ 3} On, July 17, 2006, appellant filed a Motion to Suppress arguing, in part, that there was no lawful cause to stop appellant and/or probable cause to arrest her. A hearing on appellant's motion was held on August 18, 2006.
 {¶ 4} At the suppression hearing, Trooper Dwaine Shephard of the Ohio State Highway Patrol testified that he was on routine patrol on June 7, 2006 at approximately 2:00 a.m. in the Belden Village area when he stopped appellant. When asked why he made the traffic stop, Trooper Shephard testified as follows:
 {¶ 5} "I initially saw the — I was behind the suspect driving eastbound on Everhard. What I first noticed it appeard [sic] that she was going to turn right onto Whipple which was a closed road at the time. She passed the white line, then she came back straight. At that time I noticed her license plate light was burned out, so I turned my overhead lights on." Transcript at 6. *Page 3 
 {¶ 6} The trooper further testified that appellant did not use her turn signal when she went over the white line in order to make a lane change. Trooper Shephard also testified that appellant did not immediately stop after he turned his overhead lights on, but eventually stopped after he sounded his siren a few times.
 {¶ 7} When Trooper Shephard approached appellant's stopped vehicle, he "detected an odor of an alcoholic beverage." Transcript at 7. When asked, appellant told Trooper Shephard that she had not been drinking. The trooper then had appellant exit her vehicle and perform field sobriety tests. Trooper Shephard testified that he observed four out of six clues on the horizontal gaze nystagmus (HGN) test and the maximum deviation was present in both of appellant's eyes. The trooper also had appellant perform the walk-and-turn and one leg stand tests. With respect to the former, Trooper Shephard testified that appellant raised her arms more than six inches rather than keeping them at her side and that, on the ninth step, appellant did not turn properly. When questioned as to the results of the one leg stand, the trooper testified that appellant raised her arms six inches for balance and swayed during the fourth count.
 {¶ 8} Appellant was then arrested for driving under the influence of alcohol. During an inventory of appellant's vehicle, an open beer bottle was found in the back behind the passenger seat. A breath test yielded a blood alcohol content of .109%.
 {¶ 9} On cross-examination, Trooper Shephard testified that he incorrectly cited appellant for failure to display license plates rather than failure to illuminate her rear license plate. The trooper further testified that there were no actual marked lines at the intersection where he saw appellant allegedly touch an edge line with her tires, but *Page 4 
rather that "if you would draw that line continuous she would be on that." Transcript at 21. When asked, the trooper testified that he did not witness a pattern of erratic driving.
 {¶ 10} Trooper Shephard also testified on cross-examination that he observed only a "light" odor of alcohol and that he did not observe any slurred speech or lack of motor coordination. With respect to the HGN, the trooper testified that he observed "the lack of smooth pursuit" in each eye and that, while he observed some nystagmus, he did not observe any pronounced nystagmus. Transcript at 30, 33. Trooper Shephard testified that while appellant "wasn't horrible at the [field sobriety] tests, . . . I had enough clues to make an arrest." Transcript at 43. He further testified that appellant did not do badly on the walk-and-turn or the one leg stand. The trooper also testified that, in his BMV 2255 form, he had indicated that he observed red glassy eyes. However, Trooper Shephard admitted on cross-examination that, although the video camera in his cruiser was just a foot and a half from appellant's face while she was seated in the front seat of his cruiser, he did not detect any red in appellant's eyes upon reviewing the videotape.
 {¶ 11} On redirect, Trooper Shephard testified he arrested appellant for operating a motor vehicle while under the influence based on the odor of alcoholic beverage, the HGN test and appellant's performance on the other two field sobriety tests. The following is an excerpt from the trooper's testimony on redirect:
 {¶ 12} "Q. Okay. When you saw — when you observed the Defendant make the lane violation, did you observe her touch what would have been a white line had it been there, or did she deviate from that white line more than just touching it with her tire?
 {¶ 13} "A. I'd say she more deviated, it was in the intersection, and it appeared that she was turning south, she left the lane of travel, be it a foot or I don't know much *Page 5 
the correct distance, she started to turn and decided to go straight more, so I don't know how to answer your question.
 {¶ 14} "Q. So did you observe the Defendant simply moving back and forth within her lanes of travel and perhaps touching the white lines with her tires?
 {¶ 15} "A. Correct.
 {¶ 16} "Q. Okay, was it more than just touching the white lines with her tires, in your opinion?
 {¶ 17} "A. Yes, if that lane would have been there or a line, she was beyond that." Transcript at 56-57.
 {¶ 18} At the suppression hearing, Trooper Shephard testified on recross that one of the reasons that appellant looked like she was going to turn and then straightened out and did not turn was because the road that she might have been turning on was closed. On further redirect he testified that appellant never used a turn signal, although he did not pull her over for such reason.
 {¶ 19} Pursuant to a Judgment Entry filed on August 29, 2006, the trial court overruled appellant's Motion to Suppress, finding that that there was reasonable suspicion to stop appellant's vehicle based on her license plate light being burned out and on appellant's actions in driving outside the lanes while making a turn, almost driving down a closed road, and failing to use a turn signal. The trial court further found that there was probable cause to arrest appellant based on the odor of an alcoholic beverage, appellant's red, glassy eyes, and appellant's driving and her performance on the field sobriety tests. *Page 6 
 {¶ 20} Following a jury trial, appellant was found guilty of operating a motor vehicle with a prohibited alcohol concentration and not guilty of operating a motor vehicle while under the influence of alcohol. After trial, the court found appellant not guilty of failure to display license plates and failure to wear a seat belt, but guilty of the marked lanes charge. As memorialized in a Judgment Entry filed on August 30, 2006, the trial court ordered appellant to serve 180 days in jail, with all but four (4) days suspended, and to pay a $250.00 fine and court costs. The trial court also ordered appellant to serve seventy-two (72) hours at the Driver's Intervention Program and suspended appellant's driver's license for a period of 180 days.
 {¶ 21} Appellant now raises the following assignments of error on appeal:
 {¶ 22} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DENYING APPELLANT'S MOTION TO SUPPRESS ANY AND ALL EVIDENCE OBTAINED BY AGENTS OF THE STATE PURSUANT TO THIS MATTER AS THE ARRESTING OFFICER LACKED A REASONABLE AND ARTICULABLE SUSPICION TO EFFECTUATE A VALID TRAFFIC STOP.
 {¶ 23} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DENYING APPELLANT'S MOTION TO SUPPRESS ANY AND ALL EVIDENCE OBTAINED BY AGENTS OF THE STATE SUBSEQUENT TO APPELLANT'S ARREST AS THE ARRESTING OFFICER LACKED PROBABLE CAUSE TO EFFECTUATE A LAWFUL ARREST."
 I, II {¶ 24} Appellant, in her two assignments of error, argues that the trial court erred in overruling her Motion to Suppress. Appellant specifically contends that Trooper *Page 7 
Shephard lacked a reasonable and articulable suspicion to stop her and that he lacked probable cause to arrest her. We disagree.
 {¶ 25} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982) 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; andGuysinger, supra.
 {¶ 26} As is stated above, appellant specifically argues that the trial court should have granted her Motion to Suppress because the stop of her vehicle by Trooper Shephard was unlawful. An investigatory stop is permissible if a law enforcement officer has a reasonable suspicion, based on specific and articulable facts, that the individual to be stopped may be involved in criminal activity. Terry v. Ohio (1968),392 U.S. 1, 21-22, *Page 8 88 S.Ct. 1868. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, cert. denied (1988),488 U.S. 910, 109 S.Ct. 264.
 {¶ 27} In the case sub judice, as is set forth above, testimony was adduced at the suppression hearing that Trooper Shephard observed appellant driving without rear plate illumination. In addition, he observed appellant commit a marked lanes violation. The trooper testified that, while there was no actual white line, appellant was outside her lane of travel. Trooper Shephard further testified that appellant failed to signal when it appeared that she was going to turn. This Court, in State v. McCormick (Feb. 2, 2001), Stark App. No. 2000CA00204, 2001 WL 111891, held that any traffic violation, even a de minimis violation, would form a sufficient basis upon which to stop a vehicle. "[T]he severity of the violation is not the determining factor as to whether probable cause existed for the stop." State v. Wei master(Dec. 21, 1999), Richland App. No. 99CA36, 2000 WL 1615 at 3. Rather, `* * * [w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *'" Id. at 3, citing Dayton v. Erickson (1996) 76 Ohio St.3d,665 N.E.2d 1091. Based on the foregoing, we find that Trooper Shephard had a reasonable, articulable reason to stop appellant.
 {¶ 28} Appellant also argues that the trial court erred in overruling her Motion to Suppress because Trooper Shephard did not have probable cause to arrest her for driving under the influence of alcohol. "Probable cause exists where there is a *Page 9 
reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that an individual is guilty of the offense with which he or she is charged."State v. Medcalf (1996), 111 Ohio App.3d 142, 147, 675 N.E.2d 1268, citing Huber v. O'Neill (1981), 66 Ohio St.2d 28, 30, 419 N.E.2d 10. In determining whether probable cause exists to arrest a suspect for driving under the influence of alcohol, "the court must examine whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving under the influence of alcohol." Id., citing Beck v. Ohio (1964), 379 U.S. 89, 91,85 S.Ct. 223, 225, 13 L.Ed.2d 142. In determining whether probable cause exists, a court must look at the totality of the facts and circumstances. Medcalf, supra.
 {¶ 29} Upon our review of the record, we find that Trooper Shephard had probable cause to arrest appellant for driving under the influence of alcohol. As is stated above, the trooper observed appellant, at 2:00 a.m., go over an area where a white line would have been if it extended through the intersection and fail to use her turn signal in order to make a lane change. Although the trooper activated his overhead lights, appellant did not stop until the trooper sounded his siren. When he approached appellant, the trooper noticed a slight odor of an alcoholic beverage and that appellant's eyes were red and glassy and, for such reason, had appellant exit her vehicle and perform field sobriety tests. At the suppression hearing, Trooper Shephard testified that he observed four out of six clues on the HGN. He further testified that, during the other two field sobriety tests, appellant improperly raised her hands six inches and, on the *Page 10 
walk-and-turn, did not turn properly. With respect to the one leg stand, the trooper also testified that appellant swayed.[1]
 {¶ 30} Based on the foregoing, we find that Trooper Shephard had probable cause to arrest appellant for driving under the influence of alcohol.
 {¶ 31} Appellant's two assignments of error are, therefore, overruled.
 {¶ 32} Accordingly, the judgment of the Canton Municipal Court is affirmed.
 Edwards, J., Farmer, P.J. and Wise, J. concur *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Canton Municipal Court is affirmed. Costs assessed to appellant.
[1] Appellant, in her brief, cites to State v. Wright, Morgan App. No. CA-02-009, 2003-Ohio-3520 in support of her argument that there was no probable cause to arrest her for operating a motor vehicle under the influence of alcohol or drugs. We find that such case is distinguishable. The officer, in Wright, received an anonymous tip that the appellee was driving a red Cougar and that the appellee was intoxicated. The officer stopped the Cougar based on the anonymous tip and did not observe any traffic violations, in contrast to the case sub judice. In holding that the trial court properly sustained the appellee's Motion to Suppress, the court, in Wright, stated as follows: "Here, the State presented evidence appellee failed the horizontal gaze nystagmus test, and performed, in the officer's own words, fairly well on the other field sobriety tests. The officer only testified to an unquantified odor of alcohol, and did not note any other physical indicia of impairment. The officer also followed the appellee on two occasions without observing any impaired or erratic driving. The original reason for the officer's search for the red Cougar was an anonymous tip, received at least an hour and one-half to two hours before Officer Dillon made the stop. Officer Dillon did not testify to any facts supporting a finding the telephoned tip was reliable." Id. at paragraph 18. While, in the case sub judice, Shephard testified that appellant did not do poorly on the field sobriety tests, he further testified that her performance on the same provided him "enough clues" to make an arrest. *Page 1