**The STATE of Ohio, Appellee,**

v.

**CLAYTOR, Appellant.**

[Cite as *State v. Claytor* (1993), 85 Ohio App.3d 623.]

Court of Appeals of Ohio,
Ross County.

No. 1842.

Decided March 30, 1993.

624

*Richard G. Ward,* Ross County Prosecuting Attorney, for appellee.

*Thomas M. Spetnagel,* for appellant.

———————

PETER B. ABELE, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Ross County Common Pleas Court finding Dean C. Claytor, defendant below and appellant herein, guilty of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(4).[1]

Appellant assigns the following errors:

First Assignment of Error:

"The trial court erred, to the prejudice of appellant, in overruling appellant's motion to suppress."

Second Assignment of Error:

"The trial court erred in finding that appellant was in possession of a controlled substance and such finding is contrary to law and against the manifest weight of the evidence."

Shortly before midnight on May 5, 1991, Chillicothe Police Officer Thomas Cunningham patrolled the area of Anderson's Bar and Grill. When he drove his patrol car to the rear of Anderson's parking lot, he observed appellant sitting inside a gray Honda Accord and a man standing outside the car next to the driver's door. The two men talked for about two minutes, and then both left the car and walked into the bar.

Shortly after the two men walked into the bar, the police dispatcher sent Officer Cunningham to 470 Locust Street to investigate a disturbing-the-peace call. As Officer Cunningham drove toward Locust Street, he realized there is no 470 Locust Street. The police dispatcher advised Officer Cunningham to patrol the Locust Street area anyway.

After patrolling the Locust Street area and finding no disturbance, Officer Cunningham returned to Anderson's Bar and Grill. When asked why he returned to Anderson's, he testified:

"Q. Why did you go back towards Anderson's?

—————————————

1. R.C. 2925.03(A)(4) provides:

   "(A) No person shall knowingly do any of the following:

   "* * *

   "(4) Possess a controlled substance in an amount equal to or exceeding the bulk amount but in an amount less than three times that amount[.]"

"A. I uh—believe that I was pulled off the lot at Anderson's for a reason. So I drove back to Anderson's to—to see what was happening back there then."

When he arrived at Anderson's shortly after midnight, he again observed appellant sitting inside the same gray Honda Accord, the other man standing outside the open driver's door, and a woman sitting in the car's passenger's seat.

As soon as Officer Cunningham drove into the parking lot, the woman opened the passenger side door, exited the vehicle, and walked toward the bar. The man outside the vehicle left the driver's side of the vehicle and began walking west toward the front entrance of the parking lot. The appellant then exited the vehicle on the driver's side and ran after the other man. Officer Cunningham lost sight of the two men as they walked to the front of the building.

Next, Officer Cunningham exited his cruiser, walked to the Honda, looked through the window, and observed an open plastic baggie containing a white powder on the driver's seat where appellant had been sitting. Officer Cunningham testified he later discovered the baggie contained a large chunk of powder, and, therefore, he did not believe it was possible that appellant had been sitting on the powder.

Officer Cunningham called for assistance. After discussing the situation with the assisting officer, Chillicothe Police Officer Dana Cousins, Officer Cunningham used a device known as a "Lock Jock" to open the driver's door of the Honda and secure the baggie with the white powder. An Ohio Bureau of Criminal Investigation and Identification expert testified the baggie contained 11.2 grams of cocaine.

After the officers removed the cocaine from the Honda, they observed a rust-colored Audi driving through the parking lot. Officer Cunningham noticed that appellant and the other man he had seen earlier in and near the Honda were now in the Audi. The Audi drove through the parking lot, around the block, and stopped up in front of Anderson's Bar and Grill.

Officer Cunningham began walking toward the Audi and appellant began walking toward Officer Cunningham. Officer Cunningham stopped appellant and advised him of his *Miranda* warnings. When told about the white powder found in his driver's seat, appellant denied any knowledge of the substance and said someone must have planted it in the Honda. Appellant persisted with his story even after Officer Cunningham informed him that no one had been around the Honda since he had exited the vehicle.

At trial, Officer Cunningham identified appellant. Officer Cousins corroborated Officer Cunningham's testimony about the false call to Locust Street and about the white powder in the baggie on the Honda's driver's seat.

On May 10, 1991, the grand jury indicted appellant for possession of cocaine in violation of R.C. 2925.03(A)(4). On June 11, 1991, appellant filed a motion to

suppress the cocaine, arguing the plain view exception to the exclusionary rule does not apply in the case *sub judice.*

Appellant waived his right to a trial by jury and agreed to have the motion to suppress heard concurrently with the trial on the merits. The court conducted a joint trial and motion hearing on November 6, 1991. The court overruled the motion to suppress and found appellant guilty as charged in the indictment. On December 20, 1991, the court entered judgment sentencing appellant to a one and one-half year definite term of actual incarceration in the Ohio Penitentiary, and fining appellant $3,000.

Appellant filed a timely notice of appeal.

I

In his first assignment of error, appellant asserts the court erred by overruling his motion to suppress evidence. In particular, appellant asserts the plain view exception to the exclusionary rule does not apply to the case *sub judice.* Appellant urges us to focus on what justification Officer Cunningham used to place himself in a position to observe the cocaine in the Honda. Appellant contends Officer Cunningham had insufficient justification to place himself in a position to look through the vehicle's window.

In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Warren* (Aug. 12, 1991), Hocking App. No. 90CA7, unreported, 1991 WL 156521. Thus, the credibility of witnesses during a motion to suppress evidence hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Tutt* (Apr. 14, 1986), Warren App. No. CA85–09–056, unreported, 1986 WL 4506. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. DePalma* (Jan. 18, 1991), Ross App. No. 1633, unreported, 1991 WL 13824. Accepting these facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. See *State v. Shelpman* (May 23, 1991), Ross App. No. 1632, unreported, 1991 WL 87312; *State v. Simmons* (Aug. 30, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

The Fourth Amendment protects against unreasonable government intrusions into areas where legitimate expectations of privacy exist. *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538. The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a

cardinal principle that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290; *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; and *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The touchstone of a Fourth Amendment analysis of lawfulness of a search is whether a person has a constitutionally protected reasonable expectation of privacy. *Katz, supra; California v. Ciraolo* (1986), 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210.

■ The plain view exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. *Coolidge, supra; Harris v. United States* (1968), 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925; *State v. Williams* (1978), 55 Ohio St.2d 82, 9 O.O.3d 81, 377 N.E.2d 1013, paragraph one of the syllabus; *Athens v. Wolf* (1974), 38 Ohio St.2d 237, 67 O.O.2d 317, 313 N.E.2d 405. For the plain view doctrine to apply to permit a warrantless seizure, the police officer must not only be located in a place where the officer has a right to be, but the officer must also have lawful right or access to the object in plain view. See, also, *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112; *State v. Benner* (1988), 40 Ohio St.3d 301, 307–308, 533 N.E.2d 701, 709; *State v. Sage* (1987), 31 Ohio St.3d 173, 185, 31 OBR 375, 385, 510 N.E.2d 343, 352.

■ Appellant correctly argues the plain view exception applies only where the officer first made a lawful initial intrusion or otherwise was in a position where he could view the contraband. Appellant, however, incorrectly contends Officer Cunningham did not properly place himself in a position where he could view the interior of appellant's vehicle. When Officer Cunningham stood beside the Honda, he stood in Anderson's Bar and Grill's public parking lot during business hours. Officer Cunningham testified the white powder was clearly visible on the driver's seat. Because any member of the public could have observed the cocaine, there is no reason why the officer would be precluded from viewing what would be visible to him as a private citizen. See *State v. Howell* (Apr. 23, 1991), Ross App. No. 1679, unreported, 1991 WL 87289; *People v. Caserta* (1984), 123 Ill.App.3d 608, 79 Ill.Dec. 52, 463 N.E.2d 190; and 1 LaFave, Search and Seizure (1987) 429, Section 2.4(b).

Appellant urges us to consider *State v. Bird* (1988), 49 Ohio App.3d 156, 551 N.E.2d 622, in support of his assertion that the officer did not have a right to be

where he stood looking into the Honda. In *Bird,* two officers observed three individuals in the front seat of a Ford. When within three car lengths of the Ford, one of the officers noticed the individual in the middle lean toward the right and the driver lean "over to the right of the steering wheel and down toward the dashboard." The officers turned to follow the Ford, and found the Ford parked and the three individuals walking thirty to forty feet away from the Ford.

When one of the officers questioned the three individuals, the other officer walked over to the Ford and shined a flashlight through the windshield on the driver's side. He noticed a detached rearview mirror lying on the floor. On the mirror was a white powdery substance subsequently identified as cocaine. The officer asked Bird for his keys, and seized the mirror.

The trial court granted Bird's motion to suppress and the Eleventh District Court of Appeals affirmed. The appellate court noted the officer with the flashlight searched Bird's automobile without a warrant. Appellant contends that *Bird* stands for the proposition that officers have no authority to look into automobiles without a warrant. We disagree. The *Bird* court considered the facts of that case when determining the officer had no lawful right to search the vehicle. Specifically, the *Bird* court noted that the officers had no reasonable belief to stop the three individuals in the first place. The court wrote at pages 157–158, 551 N.E.2d at 624:

"Placing an object below the seat of a car before exiting is a normal action which only implies the person wished to remove the object from public view."

Regardless of whether we agree with the reasoning or result in *Bird,* we find that many facts in the case *sub judice* differ from the facts in *Bird.* In *Bird,* the officers had no reason to stop the three individuals. In our case, the officers did not stop anyone. In *Bird,* the individuals partially hid the cocaine under the car seat. In our case, the cocaine was found in unquestionably plain view on the driver's seat. Appellant cites no authority holding that police officers have no right to stand in a public place and look into an automobile in much the same manner as a curious member of the public might look into an automobile.

In *Howell, supra,* we confronted a case remarkably similar to the case *sub judice* where an officer observed cocaine inside a truck parked in the Anderson's Bar and Grill parking lot in Chillicothe, Ohio. In *Howell,* we wrote at 5–6:

"In the case *sub judice* the truck was parked on a parking lot open to members of the public who chose to use it while a patron at Anderson's Bar and Grill. The cocaine was clearly visible on the seat of the truck. Since any member of the public could have observed the cocaine, there is no reason why the officer was precluded from viewing what would be entirely visible to him as a private citizen."

In *Howell,* we held the plain view exception applied to permit the search of the truck. We rejected the trial court's ruling that *Bird, supra,* required suppression of the cocaine.

Additionally, we find that because the observation of the white powder was proper under the plain view doctrine, probable cause existed for the seizure of the substance without a warrant under the motor vehicle exception to the warrant requirement. *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *California v. Carney* (1985), 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406; *Howell, supra.*

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

In his second assignment of error, appellant asserts the trial court's finding that he possessed cocaine was contrary to law and against the manifest weight of the evidence. Appellant argues his control over the cocaine may not be inferred solely from his occupancy of the vehicle where the cocaine was found. Appellant further argues that in the absence of additional evidence inferring he had constructive possession or control over the cocaine, the judgment is against the manifest weight of the evidence.

R.C. 2925.01(L) provides:

"(L) 'Possess' or 'possession' means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

Appellant argues that his control over the cocaine may not be inferred solely from the fact he occupied the Honda where the officer found the cocaine. Appellant asserts the trial court needed further evidence before it could make the inference that he exercised dominion and control over the cocaine.

When considering an appellant's claim that his conviction is against the weight of the evidence, we must defer to the trier of fact. In *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 151, 434 N.E.2d 1356, 1357, the court wrote:

"It is emphasized that an appellate court may not reverse the judgment of conviction unless reasonable minds could not fail to find reasonable doubt of the defendant's guilt. It is fundamental that the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts. * * *"

In *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus, the court held:

"A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." See, also, *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180; *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576; *Jenks, infra; State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

In *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011, the court discussed the manner in which courts should determine whether a criminal conviction is against the manifest weight of the evidence:

"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

■ It is axiomatic that the prosecution has the burden of proving all the elements of an offense beyond a reasonable doubt. However, direct evidence is not essential to prove an element of a crime. An element of an offense may be established by either circumstantial or direct evidence or both. *State v. Durr* (1991), 58 Ohio St.3d 86, 568 N.E.2d 674; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394. Additionally, when the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, overruling *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897. See, also, *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825, where the court commented that circumstantial and direct evidence are now subject to the same standard of proof. The determination of a reasonable inference based upon the evidence adduced at trial is a matter for the trier of fact. The fact-finder must weigh all the evidence, including both direct and circumstantial evidence, against the standard of proof beyond a reasonable doubt.

Appellant correctly notes the mere presence in the vicinity of illicit drugs is not sufficient to prove the element of possession. See *Cincinnati v. McCartney* (1971), 30 Ohio App.2d 45, 59 O.O.2d 34, 281 N.E.2d 855; *State v. Haynes* (1971), 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787. In the instant case, however, the evidence goes well beyond mere presence in the vicinity of the controlled substance. See, generally, *State v. Pruitt* (1984), 18 Ohio App.3d 50, 18 OBR 163, 480 N.E.2d 499.

After a review of the evidence adduced at trial, we find the prosecution presented substantial competent and credible evidence upon which the trier of fact could have reasonably concluded that appellant knowingly possessed the cocaine found in his vehicle. The evidence adduced at trial reveals the cocaine was within appellant's dominion and control. In particular, the evidence revealed that: (1) Officer Cunningham testified he found the cocaine in the same location where appellant had been seated; (2) the cocaine contained a lump, and, therefore it does not appear appellant could have been sitting on the cocaine; (3) Officer Cunningham observed the vehicle from the time appellant left the vehicle to the time the cocaine was found; and (4) the vehicle was locked and appellant had the keys in his possession.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

*Judgment affirmed.*

HARSHA, P.J., concurs separately.

GREY, J., dissents.

HARSHA, Presiding Judge, concurring.

I concur in the detailed judgment and opinion to the extent that it affirms the judgment of conviction and sentence. I write separately because I am now persuaded that this court, with this writer participating, previously conducted an incorrect analysis of the plain view doctrine in *Howell* by applying the Fourth Amendment analysis specified in *Coolidge.* A leading treatise in the area of search and seizure notes the following distinction between the plain view doctrine where there is a prior justification for a search and the plain view doctrine where there is no search at all:

" * * * The fact that there is a plain view in the *Coolidge* sense does not mean that there has been no search; indeed, the situations described by Justice Stewart are in the main search situations—search pursuant to a warrant naming other objects, search during hot pursuit, search incident to arrest, and a search for purposes other than finding evidence. Rather, the effort in *Coolidge* is to describe when items so found may be seized even though they were not the items which were legitimate objectives of that search. The *Coolidge* plurality identifies three requirements: (1) there must be a prior valid intrusion; (2) the discovery of the seized items must be inadvertent; and (3) it must be immediately apparent to the police that they have evidence before them. The significance of these requirements in terms of justifying a warrantless seizure of evidence is discussed at several points in this Treatise.

"*By comparison, the concern here is with plain view in a quite different sense, namely, as descriptive of a situation in which there has been no search at all in the Fourth Amendment sense.* This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in Coolidge, encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area. *This includes* the case in which an officer discovers an object which has been left in an 'open field' or similar nonprotected area, and also *those cases in which an officer—again, without making a prior physical intrusion—sees an object* on the person of an individual, within premises, or *within a vehicle.* In each of these instances there has been no search at all because of the plain view character of the situation, and this means that the observation is lawful without the necessity of establishing either pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement.

"It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the *Coolidge* plurality opinion. By definition, there is no prior valid intrusion. Whether it is immediately apparent that what has been observed is evidence of crime may have a bearing upon what the police may do as a result of this nonsearch observation, but it is clearly irrelevant to the threshold issue of whether the observation was a search." (Footnotes omitted and emphasis added.) 1 LaFave, Search and Seizure (2 Ed.1987) 321–322, Section 2.2(a).

Other commentators have chosen to characterize this situation as being in "open view" rather than confusing the issue with the plain view denomination. Nonetheless, the importance of the distinction focuses upon the fact that there is no Fourth Amendment right to privacy involved here. Accordingly, since the Fourth Amendment does not apply, no Fourth Amendment analysis is needed or appropriate.

As a general rule, one does not have a reasonable expectation of privacy in common or public areas. When others have access to an area, the accused assumes the risk that others will observe items left in open view. While the accused may have a subjective expectation of privacy in his car while parked in a business lot, it is not one which this court, or more importantly, society is prepared to recognize as reasonable.

Our decision in *Howell*, correctly recognized at 6 that an officer's initial observations in viewing cocaine on the seat of a truck did not constitute a search, but then incorrectly applied the *Coolidge* requirements. By contrast, the principal opinion correctly avoids applying the *Coolidge* test, although it does cite *Howell* to support application of the plain view doctrine here. As noted by both

the principal opinion and LaFave, the characterization of an observation as a nonsearch plain (open) view situation settles the lawfulness of the observation itself, but it does not determine whether a seizure of the observed object would likewise be lawful. The plain (open) view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer's access to the object itself has a Fourth Amendment justification. See, *e.g.,* LaFave, *supra,* at 323–324. The principal opinion aptly determines that the seizure of the cocaine was justified pursuant to the automobile exception to the warrant requirement set forth in *Carroll.* Accordingly, I concur.