[Cite as *State v. Hall*, **2016-Ohio-5787.**]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2015 CA 00213 |
| MARCUS HALL | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Canton Municipal
Court, Case No. 2015 TRC 5377


JUDGMENT:    Reversed and Remanded


DATE OF JUDGMENT ENTRY:    September 12, 2016


APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

JOSEPH MARTUCCIO               EARLE E. WISE, JR.
CANTON LAW DIRECTOR           122 Central Plaza North
TYRONE D. HAURITZ               Canton, Ohio  44702
CANTON CITY PROSECUTOR
CHRISTY M. DONNELLY
ASSISTANT CITY PROSECUTOR
218 Cleveland Avenue SW
Post Office Box 24218
Canton, Ohio  44701-4218

*Wise, P. J.*

{¶1} Defendant-Appellant Marcus Hall appeals the decision of the Canton Municipal Court, Stark County, which denied his motion to suppress the results of a traffic stop of his vehicle by a state trooper. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows:

{¶2} On July 24, 2015, shortly before 1:30 AM, Trooper Carlos Castellanos of the Ohio State Highway Patrol was on patrol in his cruiser in the vicinity of Fulton Drive NW and West Tuscarawas Street near downtown Canton. At that time, he observed a 2008 Chevrolet sedan, subsequently determined to have been operated by appellant, traveling eastbound on West Tuscarawas. The Chevrolet then made a left-hand turn northbound onto Fulton Drive. Trooper Castellanos decided to initiate a traffic stop based on his observation that appellant, while making the left turn, had improperly driven over the double yellow lines. Appellant stopped quickly after the trooper activated his lights a short distance north of the intersection, past the point the road splits into Shorb Avenue NW.

{¶3} Trooper Castellanos next walked up to appellant's vehicle on the driver's side. Upon his approach, the trooper detected an odor of alcoholic beverage emanating from the interior of the vehicle. Additionally, Trooper Castellanos noticed an odor of marijuana and that appellant had red, watery, bloodshot eyes. He observed one female passenger also in the car. He engaged in some conversation with appellant and asked for his license and registration.

{¶4} Trooper Castellanos then asked appellant to exit the vehicle based on the odor of alcoholic beverage, odor of marijuana and glassy bloodshot eyes. The trooper

indicated that he still was able to detect the odor of alcoholic beverage on appellant's person after exiting the vehicle. The trooper then administered several field sobriety tests, ultimately observing clues on the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test. He thereupon made the decision to arrest appellant.

{¶5} Appellant was charged with one count of operating a motor vehicle while under the influence of alcohol (R.C. 4511.19(A)(1)(a)), a first degree misdemeanor. Appellant was also charged with one count of driving in marked lanes (R.C. 4511.33), failure to wear a seat belt (R.C. 4513.263) and possession of marijuana (R.C. 2925.11(C)(3)(a)), all minor misdemeanors.

{¶6} Appellant was arraigned on July 29, 2015, at which time he entered pleas of not guilty to all counts. Following pre-trial procedures, the matter was scheduled for a jury trial to commence on October 28, 2015. However, on October 22, 2015, appellant, with the assistance of trial counsel, filed a motion to suppress evidence, simultaneously requesting leave to file same.[1]

{¶7} The trial court granted leave to file, and it proceeded to conduct a suppression hearing on October 28, 2015. A video of the incident was recorded from the cruiser. The video was played for the court and admitted as an exhibit. The Court expressly stated that "the video does not demonstrate what the officer is saying," as it related to the marked lane violation. Tr. 49. The Court stated it would therefore rely on

---

[1] Crim.R. 12(D) states as follows: "All pretrial motions except as provided in Crim.R. 7(E) and 16(M) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions." We additionally note at this juncture that the motion to suppress was also filed under case number 2015CRB3424 (the marijuana possession case), but the notice of appeal concerns only 2015TRC5377.

the credibility of the officer. Tr. 51. Following the presentation of testimony, the trial court denied appellant's motion to suppress.

{¶8} On the same day, appellant pled no contest to the charge of OVI, as well as the marked lanes violation and the seat belt violation. The court thereupon sentenced appellant to one-hundred and eighty days in the Stark County Jail, with all but three days suspended. Appellant was also permitted to serve his three days in the Driver's Intervention Program. In addition, appellant was sentenced to a 180-day suspension of his driver's license, six points on his license, and twenty-five hours of supervised community service.

{¶9} On November 30, 2015, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶10} "I. THE TRIAL COURT ERRED TO PREJUDICE OF THE APPELLANT WHEN IT DENIED HIS MOTION TO SUPPRESS THE EVIDENCE WHICH WAS COLLECTED AFTER APPELLANT'S VEHICLE WAS STOPPED WITHOUT PROBABLE CAUSE IN VIOLATION [SIC] HIS RIGHTS UNDER THE FOURTH AND FORTEENTH [SIC] AMENDMENTS TO THE UNITED STATE [SIC] CONSTITUTION AND ARTICLE ONE OF THE OHIO CONSTITUTION, PROTECTING AGAINST UNREASONABLE SEARCHES AND SEIZURES."

I.

{¶11} In his sole Assignment of Error, appellant argues that the trial court erred in denying his motion to suppress. We agree.

*Standard of Review*

**{¶12}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

**{¶13}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

*Initial Traffic Stop*

**{¶14}** Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts, that an occupant is or has been engaged in criminal activity. *State v. Logan,* 5th Dist. Richland No. 07–CA–56, 2008–Ohio–2969, ¶ 15, quoting *State v. Gedeon* (1992), 81 Ohio App.3d 617, 618. Reasonable suspicion constitutes something less than probable cause. *State v. Carlson* (1995), 102 Ohio App.3d 585, 590. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 9, 665 N.E.2d 1091. In sum, " ' * * * if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *State v. Adams,* 5th Dist. Licking No. 15 CA 6, 2015–Ohio–3786, ¶ 23, quoting *State v. Mays,* 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008–Ohio–4539, ¶ 8.

**{¶15}** The gist of the State's case regarding the initial stop, for purposes of suppression, was that appellant had illegally driven over the double-yellow lines in making his left-hand turn onto Fulton, thereby justifying said traffic stop. We note Trooper Castellanos specifically testified: "[D]uring the course of the turn [Appellant] drove over the center lane of the double yellow marked lines. After the turn he stayed over the center line and then slowly drifted back into his proper marked lane after that." Suppression Tr. at 7. Appellant's present emphasis is on potential discrepancies between the trooper's testimony and the video recording of the traffic stop in question, which was played at the

hearing. We note the trial court found that the video neither exonerated appellant nor fully confirmed the trooper. Tr. at 49. The court stated as follows at the end of the suppression hearing: "That video does not prove to me that you went over the center line. It does prove to me you were in the position, your car was in the place that supports what the officer said. I then have to rely on his testimony. His testimony is that you went over the line. We can see your tire on the line. That's probably not sufficient enough, so that gap in video is supported by credible testimony here in court, and based on that credible testimony I will  find there was sufficient cause for a traffic stop ***." Tr. at 51-52.

**{¶16}** We find the State was able to establish at the suppression hearing that it would have been difficult for the dash camera to record the violation as observed by Trooper Castellanos because the camera is mounted in a stationary fashion and, while having a zoom-in feature, is unable to be turned left and right. *See* Tr. at 20. Thus, based on his reported position from which he first observed appellant's vehicle, the camera would been prevented from getting a straight-on view of the lane violation. *Id.*

**{¶17}** It has been aptly recognized that "[b]ecause the trial court acts as the trier of fact in suppression hearings and is in the best position to resolve factual issues and evaluate the credibility of witnesses, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Shrewsbury,* 4th Dist. Ross No. 13CA3402, 2014–Ohio–716, ¶ 11, citing *State v. Burnside,* 100 Ohio St.3d 152, 797 N.E.2d 71, 2003–Ohio–5372, ¶ 8. Furthermore, it is well-established that an officer's reasonable articulable suspicion does not require proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the

offense. *State v. Willis,* 5th Dist. Licking No. 14 CA 103, 2015–Ohio-3739, ¶ 25, citing *Westlake v. Kaplysh,* 118 Ohio App .3d 18, 20, 691 N.E.2d 1074 (8th Dist.1997).

**{¶18}** We therefore find no error in the trial court's denial of suppression regarding the initial traffic stop of appellant's vehicle.

<u>*Detainment to Administer Field Sobriety Tests*</u>

**{¶19}** A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 5th Dist. Tuscarawas No. 2014 AP 11 0049, 2015-Ohio-3536, ¶ 18, quoting *State v. Anez* (2000), 108 Ohio Misc.2d 18, 26-27, 738 N.E.2d 491. Although requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment, courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol in order to conduct a field sobriety test. *See State v. Bright,* 5th Dist. Guernsey No. 2009–CA–28, 2010–Ohio–1111, ¶ 17, citing *State v. Knox,* 2nd Dist. Greene No. 2005–CA–74, 2006–Ohio–3039. In reviewing this issue, we apply a "totality of the circumstances" approach. *See, e.g., City of Fairfield v. Lucking,* Butler App. No. CA2002–12–303, 2004–Ohio–90, ¶ 8, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044.

**{¶20}** Appellant's focus in the case *sub judice* is on the question of whether Trooper Castellanos had reasonable suspicion to proceed with the field sobriety tests, as opposed to issues concerning the technical aspects of the tests themselves. *See* Appellant's Brief at 5-7.

{¶21} In this instance, following a post-midnight traffic stop, the trooper testified that he detected the odor of alcoholic beverage and the smell of marijuana both emanating from the interior of appellant's car. Suppression Tr. at 8. As the encounter continued, the trooper also noticed appellant's "red, watery, bloodshot eyes." *Id.* The trooper spoke with appellant about appellant's purported bluegill fishing earlier that day, and appellant carried on the conversation while providing the trooper with his license and registration without incident. *See* Tr. at 24. No slurred speech was reported.

{¶22} As the encounter continued, according to the cross-examination testimony of Trooper Castellanos, appellant admitted to having "a couple beers while fishing," although the trooper could not recall what appellant said as to the time frame for such consumption in relation to the late-night stop. *See* Tr. at 38. However, the trooper admitted on re-cross that under the "initial observations of the suspect" portion of his written narrative report, he recorded that appellant stated he had not had anything to drink. Tr. at 44. The trooper then testified: "I think we had a later conversation." *Id.* Nonetheless, the trial court later orally concluded: "Your attorney's correct, you never admitted to drinking. We got that clarified." Tr. at 52.

{¶23} The record further reflects that Trooper Castellanos made the decision to have appellant exit the vehicle. Appellant did so without any noticeable difficulty. Tr. at 25. A pat-down search of appellant revealed no weapons. But the trooper was able to confirm that an "odor of consumed alcohol" was emanating from appellant's person. Tr. at 9. The trooper at that point requested that appellant perform field sobriety tests. *Id.*

{¶24} In *State v. Smith*, 5th Dist. Licking No. 09-CA-42, 2010-Ohio-1232, we reiterated that under well-settled Ohio law, "where a non-investigatory stop is initiated and

the odor of alcohol is combined with glassy or bloodshot eyes *and further indicia of intoxication*, such as an admission of having consumed alcohol, reasonable suspicion exists." *Id.* at ¶ 34 (emphasis added), citing *State v. Wells,* 2nd Dist. Montgomery No. 20798, 2005-Ohio-5008 (additional citations omitted). *See, also, State v. Beeley,* 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶16.

**{¶25}** There is no present dispute in the case *sub judice* that the trooper, per his testimony, recalled that an odor of alcohol beverage emanated from appellant's car and later his person. In addition, the trooper described appellant's eyes red, watery and bloodshot eyes. However, we find the record reflects scant evidence of "additional indicia of intoxication" per *Smith*, *supra*. Appellant was also able to carry on a basic conversation regarding his fishing pastime, even while his attention was divided by the request for his standard driver's paperwork. As discussed above, the testimony indicated appellant did not slur his speech, fumble with his wallet, or stumble or sway upon exiting his vehicle. He understood the requests to walk to the cruiser and for a pat down of his person. The trooper initially indicated that appellant had admitted to earlier alcohol consumption, but this was contrary to his report's written narrative section, leading the trial court to specifically conclude that there had been no admission to alcohol consumption. Tr. at 52. We find no basis to alter this conclusion by the trial court as the finder of fact, and we correspondingly do not rely on the State's insistence in its response brief that there was an "admission to drinking" by appellant. *See* Appellee's Brief at 10. Furthermore, as appellant notes, the stop in this instance was for a single marked lane violation occurring during a left turn, without speeding or additional swerving. We find this falls short of "erratic" driving for purposes of our present *Smith* analysis. *See, e.g., State v. Klein*, 5th

Dist. Stark No. CA-6617, 1985 WL 8272 (July 15, 1985) (suggesting a distinction between erratic driving and so-called "garden variety" drunk driving characteristics such as weaving or moving left of center).

### Conclusion

**{¶26}**  We recognize that these cases often present close calls, both for the courts and the law enforcement officers on the scene. However, upon review, while we find the initial traffic stop of appellant herein was constitutionally permissible, under the circumstances presented, we hold there was no reasonable basis for the trooper to ask appellant to step out and participate in field sobriety testing. We therefore hold the trial court erred in denying the motion to suppress in this regard.

**{¶27}**  Appellant's sole Assignment of Error is therefore sustained to the extent that the evidence obtained as a result of and subsequent to the field sobriety testing should have been suppressed.

**{¶28}**  For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby reversed and remanded.

By: Wise, P. J.
Delaney, J., and
Baldwin, J., concur.

JWW/d 0817