[Cite as *State v. Unger*, **2017-Ohio-5553.**]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2016 CA 00148 |
| MIKEAL UNGER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Canton Municipal
Court, Stark County, Case No. 2016 TRC
1871


JUDGMENT:      Reversed and Remanded


DATE OF JUDGMENT ENTRY:      June 26, 2017


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

JOSEPH MARTUCCIO      STACEY ZIPAY
CANTON LAW DIRECTOR      201 Cleveland Avenue SW
TYRONE D. HAURITZ      Suite 104
CANTON CITY PROSECUTOR      Canton, Ohio 44702
KELLY PARKER
ASSISTANT PROSECUTOR
218 Cleveland Avenue SW
Post Office Box 24218
Canton, Ohio 44702

*Wise, John, J.*

{¶1}    Appellant Mikeal Unger appeals his conviction, in the Canton Municipal Court, Stark County, for OVI and driving under a twelve-point suspension. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}    On March 15, 2016, Appellant Unger was operating a white 2006 Chevrolet Trailblazer in the vicinity of West Tuscarawas Street and Interstate 77 in Canton, Ohio. At about 8:45 AM on that date, Sergeant Shane Cline of the Stark County Sheriff's Department was completing an unrelated traffic stop on a side street near West Tuscarawas, when he observed the aforesaid Trailblazer go past his position three times in a seven-to-eight minute period, moving slowly on the first pass.

{¶3}    Sergeant Cline finished what he was doing, got in his cruiser, and pulled up behind appellant's Chevy Trailblazer. He then utilized his "I-Links" database system to check the license plate number on the Trailblazer. The database indicated that the license plate came back to a Chevrolet, but one with a different paint color.[1]

{¶4}    Sergeant Cline decided to initiate a traffic stop. He approached the Trailblazer and made contact with appellant and a passenger. Tr. at 11, 42. At that time, he could smell burnt marijuana. Tr. at 10. The passenger told Cline that he just got done smoking marijuana. *Id.* According to Cline, appellant also admitted that he had smoked marijuana that day. *Id.*

---

[1]   Sergeant Cline's testimony at the suppression hearing was somewhat limited on these points. At first he said he believed the make and model matched, but on cross-examination he indicated that the I-Links system would have just given the Chevrolet name. He added that "usually the S-U-V's come back as hatchbacks," although he was unsure. *See* Tr. at 9, 39-40. Furthermore, Cline did not recall the color of the vehicle actually listed on the registration of appellant's vehicle, and he stated he had merely written "different color" on his paperwork. Tr. at 39.

**{¶5}** The officer returned to his cruiser, and by checking the vehicle identification number ("VIN") he confirmed the Trailblazer was not stolen. Tr. at 11. However, Sergeant Cline apparently initially determined that appellant "was valid," giving no indication at that time that appellant was driving under suspension. Tr. at 11. Cline returned to the Trailblazer and asked appellant to exit and perform field sobriety tests ("FSTs"). Tr. at 12. He based his request on the odor of marijuana, appellant's admission to smoking earlier, and the observation he made that appellant's tongue had a yellow coating and raised taste buds, possible indicators of drug use. *Id.*

**{¶6}** Based on what he had observed and the results of his FSTs, Sergeant Cline arrested appellant for OVI (R.C. 4511.19(A)(1)(a)). Appellant then submitted to a chemical test. Tr. at 31. Appellant was also charged with driving under an OVI suspension, which was subsequently amended to a charge of driving under a twelve-point suspension (R.C. 4510.037(J)).

**{¶7}** On June 13, 2016, appellant filed a motion to suppress, alleging that the arresting officer did not have: (1) reasonable articulable suspicion to stop appellant's vehicle; (2) reasonable articulable suspicion to detain appellant in order to perform field sobriety tests; or (3) probable cause to arrest appellant for OVI.

**{¶8}** A suppression hearing was conducted on June 15, 2016. The sole witness called was Sergeant Cline. The trial court denied appellant's motion to suppress via a judgment entry issued on June 17, 2016.

**{¶9}** On June 29, 2016, appellant pled no contest to OVI and driving under a twelve-point suspension. The trial court found him guilty on both counts. Appellant was

thereafter sentenced *inter alia* to 180 days in jail on each count, with all but 10 days suspended on the OVI count and all but 3 days suspended on the DUS count.

{¶10} On July 29, 2016, appellant filed a notice of appeal. He herein raises the following three Assignments of Error:

{¶11} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE COURT FOUND PROBABLE CAUSE FOR APPELLANT'S ARREST BASED SOLELY ON EVIDENCE OF DRUG USE, WITHOUT THE PRESENCE OF IMPAIRMENT.

{¶12} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE SERGEANT CLINE'S STOP OF APPELLANT WAS NOT BASED ON REASONABLE ARTICULABLE SUSPICION.

{¶13} "III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE SERGEANT CLINE DID NOT HAVE REASONABLE ARTICULABLE SUSPICION TO DETAIN APPELLANT."

*Standard of Review*

{¶14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 437

N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

II.

**{¶15}** In his Second Assignment of Error, which we find dispositive of this appeal, appellant contends the trial court erred in denying his motion to suppress on the question of the officer's reasonable articulable suspicion to make the traffic stop in question. We agree.

**{¶16}** The stop of a vehicle by law enforcement officers requires a balancing of the public's privacy interest against legitimate government interests to determine if the seizure was reasonable. *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. "It is well-settled law in Ohio that reasonable and articulable suspicion is required for a police officer to make a warrantless stop." *State v. Bay,* Licking App.No. 06CA113, 2007-Ohio-3727, ¶ 65, citing *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. "* * * [R]easonable suspicion is not proof beyond a reasonable doubt, but is judged by all the surrounding circumstances." *State v. Boyd* (Oct. 10, 1996), Richland App.No. 96-CA-3, 1996 WL 608378.

**{¶17}** In the case *sub judice*, we first note Sergeant Cline did not indicate that appellant had committed any observed traffic violation. *See* Tr. at 41. Sergeant Cline

further made no mention of observing an equipment violation or erratic or impaired driving. He noted he made the decision to run appellant's vehicle's license plate through I-Links because he found it suspicious that a vehicle would drive slowly by him three times while he was in the midst of another traffic stop (Tr. at 8-9), although he conceded that a motorist's behavior of driving past a police officer multiple times is not typical behavior by an individual driving a stolen vehicle (*see* Tr. at 38-40).

{¶18} On cross-examination, Sergeant Cline indicated that he had maintained his suspicion "based on the [vehicle's] color alone" being different than what the records system showed. *See* Tr. at 40. Cline was also asked by defense counsel if "the suspicion may have been in your head that the driver of the vehicle stole a Chevy Trailblazer, could be hatchback, and happened to have put a plate on it from another Chevy Trailblazer hatchback that was a different color?" He replied, "[t]hat is correct." Tr. at 40-41. Cline also stated, in regard to such suspected plate-switching tactics between similar vehicles, that "[w]e've had that numerous times this year" and that "[w]e've really been watching it." Tr. at 41. Cline also stated he did not know if a vehicle owner was required to report paint color changes to the Ohio Bureau of Motor Vehicles. Tr. at 41-42.

{¶19} We herein must again "recognize that these cases often present close calls, both for the courts and the law enforcement officers on the scene." *State v. Hall*, 5th Dist. Stark No. 2015 CA 00213, 2016-Ohio-5787, 70 N.E.3d 1154, ¶ 26. The briefs before us in the case *sub judice* provide no case law directly on point, and our research reveals somewhat limited discussion in Ohio of the role of a vehicle's paint scheme *per se* as it relates to a law enforcement officer's suspicion of criminal activity in connection with a traffic stop. One Ohio case references the existence of an "after-market" paint job on a

late-model car, but the vehicle paint factor in that instance was accompanied by several other observations articulated by the arresting officer. *See State v. Wynter*, 2nd Dist. Miami No. 97 CA 36, 1998 WL 127092. However, the Supreme Court of Arkansas and the Supreme Court of Florida have both recently held that a discrepancy between the color of a defendant's vehicle and the color listed in registration records accessed by a police officer does not of itself provide the officer with reasonable suspicion to perform an investigatory traffic stop. *See Schneider v. State*, 2015 Ark. 152, 459 S.W.3d 296 (2015); *State v. Teamer*, 151 So.3d 421 (Fla. 2014).

**{¶20}** Upon review of the record and the circumstances presented herein, we find a discrepancy in an automobile's paint color found via a database check, particularly where the vehicle is already ten years old, even when combined with the fact of the vehicle passing a stationary police officer three times over the course of a few minutes, cannot be classified as a reasonable suspicion of motor vehicle theft sufficient to justify a warrantless stop, as maintained by the arresting officer in this case. We therefore hold the trial court erred in denying the motion to suppress in this regard.

**{¶21}** Appellant's Second Assignment of Error is therefore sustained to the extent that all evidence obtained as a result of and subsequent to the stop of appellant's Trailblazer should have been suppressed.

I, III.

**{¶22}** Based on our above conclusions, appellant's remaining Assignments of Error are found to be moot. *See* App.R. 12(A)(1)(c).

**{¶23}** For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby reversed and remanded.


By: Wise, John, J.

Gwin, P. J., concurs.

Hoffman, J., concurs separately.


JWW/d 0605

*Hoffman, J., concurring*

{¶24} I concur in the majority's analysis and disposition of Appellant's second assignment of error. And, I agree our ruling with respect thereto is dispositive of this appeal.

{¶25} Conceding it is unnecessary to address the first assignment of error and recognizing doing so is merely dicta on my part, I, nevertheless, chose to do so. I do so because I believe the issue raised therein is a significant one which can provide guidance in future cases.

{¶26} The trial court made a specific finding based upon the video of the stop, the results of all of the field sobriety tests and the arresting officer's generalized observations there was insufficient evidence to determine the Appellant was impaired. However, the trial court determined when there is otherwise sufficient probable cause a person has consumed, used and has a likely identifiable amount of marijuana, THC or metabolite in that person's system, that alone establishes probable cause to arrest for OMVI. I disagree.

{¶27} Just as it is not against the law to drink and drive, it is not against the law to use marijuana and drive. It is only a violation when certain levels of alcohol or THC exist in the defendant's body or the consumption or use results in impairment. Given the trial court's determination the evidence was insufficient to support a finding of impairment, I find no probable cause existed to arrest Appellant for OMVI, no more so than would the mere admission a defendant had consumed alcohol.