[Cite as *State v. Bashada*, 2017-Ohio-8501.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| STEPHEN M. BASHADA | : | Case No. CT2017-0039 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County
Court of Common Pleas, Case No.
CR2017-0078

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      November 8, 2017

APPEARANCES:

For Plaintiff-Appellant      For Defendant-Appellee

D. MICHAEL HADDOX      C. JOSEPH MCCOY
Prosecuting Attorney      CARL E. MCCOY
     57 East Main Street
By: GERALD V. ANDERSON II      Newark, Ohio 43055
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth Street, P.O. Box 189
Zanesville, Ohio 43702-0189

*Baldwin, J.*

**{¶1}** Plaintiff-appellant State of Ohio appeals from the Journal Entry of the Muskingum County Court of Common Pleas granting defendant-appellee Stephen Bashada's Motion to Suppress.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On February 22, 2017, the Muskingum County Grand Jury indicted appellee on one count of possession of drugs (Oxycodone) in violation of R.C. 2925.11(A), a felony of the fifth degree, one count of possession of drugs (hashish) in violation of R.C. 2925.11(A), a minor misdemeanor, and one count of possession of drugs (marijuana) in violation of R.C. 2925.11(A), a minor misdemeanor.   At his arraignment on March 29, 2017, appellee entered a plea of not guilty to the charges.

**{¶3}** Thereafter, on June 1, 2017, appellee filed a Motion to Suppress. Appellee, in his motion, argued, in part, that the trooper who stopped his vehicle did not have reasonable articulable suspicion that appellee was engaged in criminal activity when conducting the stop and that all evidence seized as a result of the stop should be suppressed. A hearing on the Motion to Suppress was held on June 20, 2017. The following testimony was adduced at the hearing.

**{¶4}** Ohio State Highway Patrol Trooper Samuel K. Hendricks testified that on June 5, 2016, he was sitting on Interstate 70 when he observed appellee, who he estimated as approximately 30 years old, slow down just prior to the 55 mile per hour zone. The Trooper testified that as he started catching up with appellee, appellee got off on the Fifth Street ramp. When he ran a registration check on appellee's vehicle, Trooper

Hendricks received information that the vehicle was a black 2015 Honda hatchback owned by a 57 year old female from Loveland, Ohio. According to the Trooper, the vehicle that he observed was dark gray. He was unsure of the year of the vehicle.

{¶5} Because he was concerned that the vehicle might have been stolen based on the issue with registration, Trooper Hendricks initiated a traffic stop. He testified that he immediately observed criminal behavior. Trooper Hendricks testified that appellee only rolled down the window a couple of inches and that appellee was very nervous and had trouble getting his driver's license out because his hands were trembling. Trooper Hendricks further testified that while he was waiting for appellee to produce insurance, he observed marijuana debris loose around the gear shift area. He then had appellee exit the vehicle and sit in his cruiser. Appellee, according to the Trooper Hendricks, told him that he had marijuana in the center console of the vehicle. After the Zanesville Police arrived, Trooper Hendricks searched appellee's vehicle and found a small amount of marijuana, a marijuana vaporizer, and some hash butter. In the luggage on the backseat, he found an orange pill bottle containing three dosage units of oxycodone hydrochloride. Trooper Hendricks, when asked, testified that he did not believe that appellee had a prescription for them.

{¶6} On cross-examination, Trooper Hendricks testified that at the time he ran the registration check on the vehicle, he had not observed any traffic violations. He testified that he decided to run the vehicle's license plates because it appeared that appellee tried to avoid him by abruptly exiting the highway and that appellee was excessively nervous after the vehicle was stopped. Trooper Hendricks also testified that he decided to stop the vehicle because appellee slowed down when he saw the Trooper

and exited the highway, because the color of the vehicle did not match the registration, and because the out of county vehicle was registered to a 57 year old woman. Trooper Hendricks indicated that he was concerned that the vehicle had been stolen and the plates on the vehicle had been changed.

{¶7} The following testimony was adduced when Trooper Hendricks was asked by the trial court whether the year and make listed on the vehicle registration matched the vehicle that appellee was driving:

{¶8} THE WITNESS: That - - on the registration, yeah. I confirmed with the VIN, sir, yes. The vehicle had belonged to his [appellee's] mother.

{¶9} THE COURT: And it was the - - it was the same year and the same model, correct, that came up on your - -  when you ran your registration in your vehicle - -

{¶10} THE WITNESS: Yes.

{¶11} THE COURT:  - - before you stopped him?

{¶12} THE WITNESS: Yes. I'm not sure as far as the year until I check with the VIN after I made the stop. I checked the VIN, the vehicle identification number, on the  - - the car with the vehicle identification number that the BMV had listed.

{¶13} THE COURT: When you saw that vehicle, you had no reason to believe it was not the one that came up on the registration.

{¶14} THE WITNESS: Yes, I did, just because the color didn't match?

{¶15} THE COURT: So it went from a dark gray to black?

{¶16} THE WITNESS: Right. It was a dark gray vehicle, like - - maybe like a charcoal - - not even really a charcoal. But like probably the - - the prosecutor's coat to,

I mean, black. It was definitely you could tell the difference, a black and gray. It was not - - like I said, it wasn't like a teal color car is listed as green so - -

**{¶17}** Transcript at 36-37.

**{¶18}** At the conclusion of the hearing, the trial court granted appellee's Motion to Suppress, finding that there was no reasonable articulable suspicion to stop appellee's vehicle. The trial court's decision was memorialized in a Journal Entry filed on June 20, 2017.

**{¶19}** Appellant then filed a Motion for Leave to Appeal Pursuant to App.R. 5 (C). This Court, as memorialized in a Judgment Entry filed on July 10, 2017, sustained such motion.

**{¶20}** Appellant now raises the following assignment of error on appeal:

**{¶21}** THE TRIAL COURT ERRED WHEN IT FOUND THAT THE TROOPER DID NOT HAVE REASONABLE SUSPICION TO STOP THE DEFENDANT'S VEHICLE BASED ON IMPROPER REGISTRATION.

I

**{¶22}** Appellant, in its sole assignment of error, argues that the trial court erred in granting appellee's Motion to Suppress. We disagree.

**{¶23}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141(4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592, 621 N.E.2d 726(4th

Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist. 1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist.1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶24}** At issue in the case sub judice is whether or not the stop of appellee's vehicle by Trooper Hendricks was legal. Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts that an occupant is or has been engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.E.2d 889 (1968). Reasonable suspicion constitutes something less than probable cause. *State v. Carlson,* 102 Ohio App.3d 585, 590, 657 N.E.2d 591 (9th Dist.1995). The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. In a situation where the officer has observed a traffic

violation, the stop is constitutionally valid. *Dayton v. Erickson,* 76 Ohio St.3d 3, 9, 1996–Ohio–431, 665 N.E.2d 1091. In sum, " ' * * * if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *State v. Adams,* 5th Dist. Licking No. 15 CA 6, 2015–Ohio–3786, ¶ 23, quoting *State v. Mays,* 119 Ohio St.3d 406, 2008–Ohio–4539, 894 N.E.2d 1204, ¶ 8.

**{¶25}** In the case sub judice, Trooper Hendricks testified that he did not observe appellee commit any traffic violations and that one of the reasons that he stopped appellee was because the vehicle was dark gray while the registration indicated that it was black.

**{¶26}** This Court recently addressed the issue of discrepancy in paint color in *State v. Unger*, 5th Dist Stark. No. 2016 CA 00148, 2017-Ohio-5553. In *Unger*, the appellant filed a Motion to Suppress, arguing, in part, that the arresting officer did not have reasonable articulable suspicion to stop his vehicle. After the trial court denied his motion, the appellant appealed. This Court, in our decision reversing the decision of the trial court, noted that at the hearing on the motion, the Sergeant who stopped the appellant indicated that he made the decision to run the appellant's vehicle's license plate through I–Links because he found it suspicious that a vehicle would drive slowly by him three times while he was in the midst of another traffic stop. We further noted that on cross-examination, the  Sergeant indicated that he had maintained his suspicion "based on the [vehicle's] color alone" being different than what the records system showed.

**{¶27}** In holding that the trial court had erred in denying the Motion to Suppress, this Court, in *Unger,* held, in relevant part, as follows at paragraphs 19-20:

We herein must again "recognize that these cases often present close calls, both for the courts and the law enforcement officers on the scene." *State v. Hall*, 5th Dist. Stark No. 2015 CA 00213, 2016–Ohio–5787, 70 N.E.3d 1154, ¶ 26. The briefs before us in the case *sub judice* provide no case law directly on point, and our research reveals somewhat limited discussion in Ohio of the role of a vehicle's paint scheme *per se* as it relates to a law enforcement officer's suspicion of criminal activity in connection with a traffic stop. One Ohio case references the existence of an "after-market" paint job on a late-model car, but the vehicle paint factor in that instance was accompanied by several other observations articulated by the arresting officer. *See State v. Wynter*, 2nd Dist. Miami No. 97 CA 36, 1998 WL 127092. However, the Supreme Court of Arkansas and the Supreme Court of Florida have both recently held that a discrepancy between the color of a defendant's vehicle and the color listed in registration records accessed by a police officer does not of itself provide the officer with reasonable suspicion to perform an investigatory traffic stop. *See Schneider v. State*, 2015 Ark. 152, 459 S.W.3d 296 (2015); *State v. Teamer*, 151 So.3d 421 (Fla. 2014).

Upon review of the record and the circumstances presented herein, we find a discrepancy in an automobile's paint color found via a database check, particularly where the vehicle is already ten years old, even when combined with the fact of the vehicle passing a stationary police officer three times over the course of a few minutes, cannot be classified as a reasonable

suspicion of motor vehicle theft sufficient to justify a warrantless stop, as maintained by the arresting officer in this case. We therefore hold the trial court erred in denying the motion to suppress in this regard.

**{¶28}** We find, based on the holding in *Unger*, that the discrepancy in the paint color of the vehicle that appellee was driving did not give Trooper Hendricks reasonable articulable suspicion that appellant was engaged in criminal activity. The statutes that appellant cites, namely. R.C. 4503.21 and 4549.08, do not contain any requirement related to the registered color of a vehicle. Moreover, as noted by the trial court, "there's not reasonable suspicion based on [appellee] slowing down, he might have been speeding, exiting when it's a legal, proper exit." Transcript at 42. As is noted above, Trooper Hendricks testified that he did not observe appellee commit any traffic violations.

**{¶29}** Based on the foregoing, we find that the trial court did not err in granting appellee's Motion to Suppress.

**{¶30}** Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

John Wise, J. concur.